RICK D. ROSKELLEY, ESQ., Bar # 5125
LITTLER MENDELSON
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169-5937
Telephone: 702.862.8800
Fax No.: 702.862.8811

Attorneys for Defendant Real Stone Source, LLC.

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DAVID L. BURLING,<br><br>Plaintiff,<br><br>vs.<br><br>REAL STONE SOURCE, LLC.,<br>dba ROX PRO.,<br><br>Defendant. | Case No. 4:08-CV-00043-EJL-LMB<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendant Real Stone Source, LLC ("Real Stone"), by and through its counsel of record, Littler Mendelson, hereby moves the Court for summary judgment against plaintiff David Burling ("Plaintiff"). Plaintiff claims that Real Stone failed to pay him overtime and, therefore, violated the Fair Labor Standards Act (FLSA). Plaintiff's claim is without merit because Plaintiff was exempt from the overtime requirements of the FLSA due to his status as an outside sales representative and/or administrative employee. Accordingly, summary judgment against Plaintiff is appropriate.

This motion is based on Real Stone's Points and Authorities, Statement of All Undisputed Material Facts, exhibits, and all other papers on file in this matter.

**POINTS AND AUTHORITIES**

**I.  SUMMARY**

Plaintiff's Complaint alleges only that Real Stone violated the FLSA by failing to pay him overtime wages. Although Plaintiff concedes that Real Stone hired him as a commissioned "outside

TLER MENDELSON
ATTORNEYS AT LAW
Howard Hughes Parkway
Suite 300
Vegas, NV 89169-5937
702.862.8800

sales representative," Plaintiff alleges that his primary job duty was to "drive sales" to Real Stone independent dealers in his sales area, rather than execute sales himself and, therefore, he was not an exempt employee under the FLSA. Real Stone believes that whether Plaintiff earned his sales commission by driving sales to independent Real Stone dealers in his sales area, or executed sales himself, he was an overtime exempt employee under the outside sales and/or administrative employee exemptions under the FLSA.

At least four federal courts have reviewed the situation where a sales employee is paid a commission to drive sales to specific customers in a defined sales area, rather than execute the sale himself. Each of these courts have found that this type of sales representative _is_ exempt under either the outside sales or administrative employee exemption under the FLSA; no court has found to the contrary. Pursuant to the un-contradicted case law in this circuit and others that sales representatives such as Plaintiff are exempt from the overtime requirements of the FLSA, summary judgment should be entered against Plaintiff.

## II. STATEMENT OF ALL UNDISPUTED MATERIAL FACTS

*See* Separate Statement of All Undisputed Material Facts.

## III. SUMMARY OF RELEVANT FACTS

Real Stone is a building materials company providing modular stone for residential and commercial use. Real Stone's business model is to sell its product to and through a network of independent dealers. Real Stone does this in a two step process. First, Real Stone locates, pitches and sells existing or potential dealers on stocking and selling their product. Second, Real Stone creates demand for its dealers through a number of sales techniques designed to drive sales through its dealers who in turn purchase product from Real Stone.

To this end, Real Stone employs a number of sales representatives who are located in the various regions in which Real Stone conducts business. Real Stone sales representatives are

charged with locating and selling new dealers to buy and stock Real Stone products. To do this, the sales representatives pitch potential and existing dealers on the properties, income potential, and the market for Real Stone products. In essence, the sales representative sells existing or perspective dealers on the Real Stone product itself. The sales representative then creates a product sales proposal and an initial stocking order suggestion, and sells the dealer an initial quantity of product. The executed sales product proposal provides the essential terms and conditions for all future orders of Real Stone product. If an existing dealer desires different or new terms, it is required to execute a new sales proposal through its sales representative.

Once an area dealer has purchased and stocked Real Stone products, the Real Stone sales representatives engage in a variety of activities designed to drive sales to the dealers he or she services. The sales representative can do this by selling the use of the material to developers, contractors, architects and others in the trade. The developers, contractors, architects and others then purchase the Real Stone product from the dealer who in turn purchases from Real Stone. In a very real sense, the sales representative has achieve sales through his or her efforts.

On March 15, 2006, Real Stone hired Plaintiff as an exempt "Outside Sales Representative." Real Stone paid Plaintiff a yearly salary of $50,000, and a commission. During Plaintiff's employment as an outside sales representative, Plaintiff worked from his home in Idaho Falls, Idaho. Plaintiff was the only sales representative for Real Stone in his seven state sales area. One aspect of Plaintiff's job was to find new customers for Real Stone's independent dealers. Plaintiff did this by making cold calls to contractors, introducing Real Stone's products to masons, and setting up architectural presentations with architects. Plaintiff worked with existing customers of Real Stone's independent dealers to try to "generate sales" for dealers in his sales area.

In the Fall of 2007, Plaintiff vacationed in northern Idaho near the small town of Orofino. At this time, Plaintiff was in the process of preparing an annual business plan for his seven-state region

3.

to submit to Real Stone. While in Orofino, Plaintiff devised a plan for Real Stone to build a warehouse and company hunting lodge in the town. Plaintiff implausibly hoped to manage a new team of regional sales persons from the hunting lodge, and entertain Real Stone's customers there. Without consulting Real Stone, Plaintiff approached town authorities on Real Stone's behalf about purchasing land. Plaintiff also put a small amount of his own money forward to secure the property for Real Stone.

Plaintiff subsequently threatened to quit if Real Stone did not complete the unauthorized land purchase, hire a new regional sales team, and make him a manager. Real Stone found Plaintiff's proposed business plan impractical and on or about November 29, 2007, accepted Plaintiff's resignation. During Plaintiff's employment at Real Stone he never complained that he was not being paid overtime. Plaintiff did not on a daily basis record how many hours he worked a week; Plaintiff "reconstructed" his hours after his termination. Plaintiff filed this lawsuit on January 28, 2008, alleging that Real Stone had failed to pay him overtime in violation of the FLSA.

## IV. DISCUSSION

Plaintiff contends that Real Stone violated the FLSA because it failed to pay him overtime during his employment. Real Stone contends that it did not violate the FLSA because Plaintiff was an overtime exempt employee. "The question whether [employees'] particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Icicle v. Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S. Ct. 1527 (1986). Real Stone has the burden of proof to demonstrate that Plaintiff was an exempt employee. *See Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1445-1446 (9th Cir. 1997). The undisputed material facts of this case unambiguously demonstrate that Plaintiff was an exempt employee pursuant to the outside sales and/or administrative employee exemption of the FLSA, and that Real Stone had no obligation to pay Plaintiff overtime. Accordingly, Real Stone's Motion for Summary Judgment should be

granted.

## A. LEGAL STANDARD FOR SUMMARY JUDGMENT

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). To overcome a motion for summary judgment, a plaintiff must demonstrate there is a genuine issue of material fact for each claim. *Id.* at 327; *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c) (West 2003). The U.S. Supreme Court has stated that the party opposing summary judgment cannot simply rely upon the pleadings, but must provide sufficient evidence that would allow the reasonable trier of fact to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 247. Moreover, any factual disputes pointed out by the nonmoving party must concern material issues. Non-material factual disputes will not defeat a motion for summary judgment. *Id.* at 248.

Stressing that summary judgment is "an integral part of the Federal Rules as a whole," and not a "disfavored procedural shortcut," the Supreme Court stated:

> Rule 56 must be construed with due regard not only to the rights of persons asserting claims and defenses that are adequately based in fact to have those claims tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses had no factual basis.

*Celotex Corp.*, 477 U.S. at 327.

The moving party is not required to produce evidence showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Rather, the moving party's burden is satisfied by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* Once the moving party shows the absence of evidence, the burden shifts to the nonmoving party to show specific facts that present a genuine issue for trial. *Id.* at 332; *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). As discussed in detail below, because the undisputed facts demonstrate that

LER MENDELSON
ATTORNEYS AT LAW
Howard Hughes Parkway
Suite 300
Vegas, NV 89169-6037
702.862.8800

Plaintiff was an overtime exempt employee, Real Stone's Motion for Summary Judgment should be granted.

### B. Plaintiff was an overtime exempt outside sales representative.

Real Stone hired Plaintiff as a "sales representative" to provide "sales support." Statement of Undisputed Facts, ¶ 3. Qualified outside sales employees are exempt from the overtime requirements of the FLSA. *See* 29 U.S.C. §213(a)(1); 29 C.F.R. §541.500 et seq. The FLSA defines an exempt outside sales employee as any employee:

> (1) Whose primary duty is:
>    (i) making sales within the meaning of section 3(k) of the Act,[1] or
>    (ii) obtaining orders or contracts for services of for the use of facilities for which a consideration will be paid by the client or customer; and
>
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. §541.5.

In the instant matter, Plaintiff's employment at Real Stone qualifies for the outside sales overtime exemption of the FLSA.

Plaintiff worked away from his employer's place of business at his home in Idaho Falls, Idaho. Statement of undisputed facts, ¶ 22. Real Stone's office is in Sacramento, California. Plaintiff alleges that he traveled frequently, covering approximately 80,000 miles in one year to visit Real Stone's independent dealers, and the dealers' customers. *Id.* at ¶ 29. Plaintiff claims that there were times where he "was on the road constantly for two weeks straight." *Id.* As Real Stone's outside sales representative, Plaintiff's primary duty was to generate the sale of Real Stone products. Plaintiff researched the pool of potential independent dealers in his sales area to "find out who were possibly good fits for our company to stock and work with as a supplying dealer and to take care of sales in those areas." *Id.* at ¶ 30. Plaintiff used his own judgment and discretion to determine which

---

[1] Section 3(k) of the FLSA defines "sale" to include any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition. 29 U.S.C. §203(k).

potential dealers to contact and pursue. *Id.* Plaintiff made recommendations to his dealers what they should stock. *Id.* Plaintiff promoted certain products harder than others because "you drive your sales up however you can drive it up." *Id.*

Another aspect of Plaintiff's job was to find new customers for Real Stone's independent dealers. Statement of Undisputed Facts, ¶ 12 & 15. Plaintiff did this by making cold calls to contractors, introducing Real Stone's products to masons, and setting up architectural presentations with architects. *Id.* at ¶ 31. Plaintiff attended trade shows and gave product demonstrations. *Id.* Plaintiff conducted contractor presentations with contractors "to try to get them to use the products." *Id.* Plaintiff's demonstrations caused new customers to purchase products from Real Stone's independent dealers. *Id.* "Quite often it would be the salesperson either bringing the contractor to the dealer, or on behalf of the contractor negotiation with the dealer over circumstances on that particular job. That's something David [Burling] did quite often...." *Id.* For example, Plaintiff used his personal contacts to convince the Kingdom Hall of Jehovah's Witnesses in Cedar City, Utah to build a church using Real Stone products. *Id.*

Plaintiff was also required to work with existing customers of Real Stone's independent dealers to persuade them to buy more Real Stone products from their independent Real Stone dealer. Plaintiff assisted masons with installation of Real Stone products because if Real Stone's "product got installed and installed correctly and the masons felt comfortable with using it, they would order it from the distributor again." Statement of Undisputed Facts, ¶ 32. Plaintiff worked with existing customers to help them solve any problems with Real Stone's products. *Id.* Plaintiff investigated warranty claims from Real Stone's dealers' customers, and made recommendations whether Real Stone should honor the warranty; Plaintiff's recommendations were typically followed. *Id.* In sum, Plaintiff worked with potential and existing customers to try to "generate sales" for dealers in his sales area. *Id.* Plaintiff received a sales commission in proportion to the value of sales he brought to

TLER MENDELSON
ATTORNEYS AT LAW
Howard Hughes Parkway
Suite 300
Vegas, NV 89169-0937
702 862 8800

Real Stone's independent dealers. *Id.* at ¶ 13. Plaintiff is not somehow disqualified for the outside sales exemption because he brought sales to Real Stone's independent dealers, rather than executed the sales himself.

The United States District Court for the Central District of California reviewed a business model identical to Real Stone's and found that the plaintiff was in fact an exempt outside sales representative. In *Barnick*, the plaintiff, a former pharmaceutical sales representative, claimed that his employer Wyeth pharmaceutical company had violated the California Labor Code by, among other things, failing to pay him overtime. *Barnick v. Wyeth*, 522 F. Supp.2d 1257, 1260 (C.D. Cal. 2007). The defendant, Wyeth, moved for summary judgment against the plaintiff on the grounds that the plaintiff was an exempt outside sales representative. *Id.* at 1260. The plaintiff "did not as a general matter directly sell any Wyeth products to physicians." *Id.* at 1258. Rather, the plaintiff's "primary responsibility was to generate revenue for Wyeth by focusing on visiting specific doctors in [his] assigned territory to persuade them to prescribe the maximum number of vaccine doses...." *Id.* Specifically, "Plaintiff visited or called upon physicians on a pre-assigned list he created with Wyeth and discussed with these physicians various Wyeth pharmaceutical products...." *Id.* "Plaintiff spent 40-45 hours a week in the field." *Id.* The plaintiff's "primary responsibility was to generate revenue for Wyeth by focusing on visiting specific doctors in [his] assigned sales territory to persuade them to prescribe [] pharmaceutical products to the greatest extent possible...." *Id.* The plaintiff also received a sales commission "tied to the number of sales of Wyeth's products he assisted in generating." *Id.* at 1259.

Granting Wyeth's Motion for Summary Judgment, the court observed "[i]f an employee directs his efforts at persuading a particular customer to purchase a product and is compensated on the basis of his success in doing so then the employee is clearly engaged in sales activity and not mere general promotion of the product." *Barnick v. Wyeth*, 522 F. Supp.2d 1257, 1264-1265 (C.D.

Cal. 2007). The court concluded that the plaintiff was properly classified as an exempt outside salesperson. *Id.* at 1265. The court in *Menes v. Roche Laboratories Inc.*, 2008 U.S. Dist. LEXIS 4230 (C.D. Cal., Jan. 7, 2008) reached the same conclusion. In that case, Roche Labs employed sales representatives "to inform medical personnel about Defendant's drugs in the hope that they will prescribe Roche products to their patients." *Id.* at 3. The plaintiff sales representative alleged that she had worked more than 40 hours in one week and that Roche Labs violated the California labor code by failing to pay her overtime. Granting Roche Labs' Motion for Summary Judgment, the court found that even though the plaintiff did not "actually 'sell' anything," "Plaintiff was properly classified as an exempt outside sales person [] because the Plaintiff was hired and evaluated based on her ability as a salesperson, received training through her employer on sales techniques, received some compensation based on the total amount of products sold in her territory, and solicited new customers on her own." *Id.* at 3, 7.

The court in *D'Este v. Bayer Corp.*, 2007 U.S. Dist. LEXIS 87229 (C.D. Cal., Oct. 9, 2007) also determined that the pharmaceutical sales representative plaintiff was an exempt outside sales employee. In *D'Este*, the plaintiff's job was to "increase the prescribing habits of doctors." *Id.* at 4. To increase the prescribing habits of doctors, the plaintiff "would meet with or call on medical professionals and try to promote a dialogue [] and find a need or a fit where your product would be utilized in their practice." *Id.* While observing that "Sales Reps do not sell Roche products to medical personnel in the classic sense," the court granted Bayer's Motion for Summary Judgment because the plaintiff did meet the outside sales employee indicia in *Hodgson v. Klages Coal & Ice Co.*, and, therefore, "clearly qualifies as an exempt outside salesperson." *Id.* at 4-5.

In determining that the plaintiff was an exempt outside salesperson, the court in *Barnick, Menes, and D'Este* considered indicia in *Hodgson v. Klages Coal & Ice Co.* commonly relied upon by federal courts to support a determination that an employee should be categorized as an outside

salesperson under the FLSA. Those factors are: (1) the job was advertised as a sales position and the employee was recruited based on sales experience and abilities; (2) specialized Sales Training; (3) compensation based wholly or in significant part on commissions; (4) independently soliciting new business; (5) receiving little or no direct or constant supervision in carrying out daily work tasks. *See Barnick*, 522 F. Supp.2d at 1262, citing *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 382-84 (6th Cir. 1970); *Wirtz v. Charleston Coca Cola Bottling Co.*, 356 F.2d 428, 429-30 (4th Cir. 1966); *Wirtz v. Atlanta Life Ins. Co.*, 311 F.2d 646, 648 (6th Cir. 1963); *Jewel Tea Co. v. Williams*, 118 F.2d 202, 208 (10th Cir. 1941); *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 550 (E.D. Mich. 2004); *Fields v. AOL Time Warner, Inc.*, 261 F.Supp.2d 971, 975 (W.D.Tenn. 2003); *Bradford v. Gaylord Products*, 77 F.Supp. 1002, 1004-05 (N.D. Ill. 1948). Finding that the job functions performed by pharmaceutical sales representatives matched this indicia, the court in *Barnick, Menes,* and *D'Este* each granted summary judgment against the plaintiff. The undisputed facts of this case also match this indicia of an exempt outside sales employee.

Real Stone advertised for an "Outside Sales Representative" with a "minimum of three years outside sales experience." Statement of Undisputed Facts, ¶ 2. Before working for Real Stone, all of Plaintiff's prior employment experience – more than 14 years – related to sales. *Id.* at ¶ 4. Plaintiff is presently working as a commissioned "salesman" for another company. *Id.* at ¶ 5. Plaintiff received substantial sales training at Real Stone including mandatory sales conferences, sales mentoring, and sales demonstrations conducted by Real Stone's Sales Manager. *Id.* at ¶ 6. Plaintiff received "extensive training on how to educate [] contractors and architects...." *Id.* Plaintiff received a sales commission of more than $7000 in 2007. *Id.* at ¶ 14. One of Plaintiff's job duties was to find new independent Real Stone dealers and new customers for Real Stone's independent dealers, which Plaintiff did. *Id.* at ¶ 7, 12 & 15. Finally, Real Stone did not actively monitor or control Plaintiff's sales activities or working hours; Plaintiff typically determined when, where and

how long to perform his work. *Id.* at ¶ 20 & 21. As demonstrated, the nature of Plaintiff's employment match all the indicia of an exempt outside sales employee.

Finally, policy considerations dictate that Plaintiff be categorized as an exempt outside sale employee. In *Jewel Tea Co.*, the 10th Circuit Court of appeals explained the purpose for the outside sales exemption as follows:

> "The reasons for excluding an outside salesman are fairly apparent. Such salesmen, to a great extent, work individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman."

*Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-208 (10th Cir. 1941). As discussed above, Plaintiff worked from his home in Idaho Falls, Idaho, deciding when, where and how long to work to maximize his sales commission. Statement of Undisputed Facts, ¶ 20, 21 & 22. Real Stone could not, and did not monitor or control Plaintiff's sales activities or working hours. In considering the policy arguments for finding a pharmaceutical sales employee an exempt employee, the court in *D'Este* found that "the lack of supervision and inability to confirm the number of hours worked by an employee is of particular importance...." *D'Este*, 2007 U.S. Dist. LEXIS 87229, 15 (C.D. Cal., Oct. 9, 2007). For an outside sales employee such as Plaintiff to assert that he is not exempt "is [to] entirely divorce [his employment] from the underlying concerns motivating the exemption; i.e. the commissioned pay received by salespersons and the individual character of their work." *Barnick*, 522 F.Supp.2d at 1264. Public policy for the outside sales employee exemption requires that Plaintiff be classified as exempt under the FLSA.

C. **Plaintiff was an overtime exempt administrative professional.**

Plaintiff argues that because he "drove business" to Real Stone's dealers, rather than execute

11.

the sales himself, he should not be classified as an exempt outside salesperson under the FLSA. As discussed above, case law from the Ninth Circuit squarely contradicts this position. However, in addition to the outside sales exemption, Plaintiff may qualify for the administrative professional exemption. The FLSA defines in relevant part an exempt administrative employee as any employee:

(1) Compensated on a salary or a fee basis at a rate of not less than $455 per week, []

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. §541.200. Plaintiff's prior employment position at Real Stone meets this definition.

Plaintiff's salary was gross $962 per week. *See* Statement of Undisputed Material Facts, ¶ 1. Plaintiff's job duties at Real Stone required him to develop and manage customer relationships, promote the company's products and services, deliver informative sales presentations based on individual needs, and develop and execute a territory business plan. *Id.* at ¶ 12. Plaintiff used independent judgment and discretion to: (1) determine which material suppliers to approach about becoming non-exclusive Real Stone product dealers, *Id.* at ¶ 8, (2) solve customer problems and complaints, *Id.* at ¶ 10, (3) investigate customer warranty claims and make recommendations to Real Stone, *Id.* at ¶ 11, (4) use his expense account to drive sales, *Id.* at ¶ 16, and (5) decide when, where, how long, and with whom to work to drive sales in his area. *Id.* at ¶ 21. In Plaintiff's words: "as a manufacturer rep or sales rep basically, you're responsible for your direction most of the time." *Id.* at ¶ 9. These undisputed facts demonstrate that the duties and conditions of Plaintiff's employment qualify him as an overtime exempt administrative professional under the FLSA.

Case law from the Second Circuit provides that outside salespersons who drive sales, rather than execute sales, qualify for the administrative professional exemption of the FLSA. In *Amendola*,

12.

the district court reviewed an action brought by a pharmaceutical sales representative for, among other things, unpaid overtime in violation of the FLSA. *Amendola v. Bristol Myers Squibb Co.*, 558 F.Supp.2d 459 (S.D.N.Y 2008). Like the instant matter, the plaintiff in Amendola received a sales commission by driving product sales in her sales area, rather than directly executing product sales herself. *Id.* at 463-464, 477. Finding that the plaintiff sales representative performed "promotional work" directly related to the management or general business operations of the employer or the employer's customers, and exercised discretion and independent judgment with respect to matters of significance, the *Amendola* court concluded that the plaintiff sales representative was an overtime exempt administrative professional under the FLSA. *Id.* at 476-477. Because Plaintiff's job duties required him to engage in non manual work directly related to the business operations of Real Stone and its customers, and because his work required independent judgment and discretion, Plaintiff must be classified as an overtime exempt administrative professional under the FLSA.

## V. CONCLUSION

Plaintiff's position that he must be paid overtime under the FLSA because he drove sales to specific Real Stone dealers, rather than executed sales himself, is not supported by law. In the analogous pharmaceutical sales employee line of cases, at least four district courts have granted summary judgment after finding that the sales employee was covered by either the outside sales or administrative professional exemption; not a single court has determined that pharmaceutical sales employees are not exempt under the FLSA. Real Stone hired Plaintiff as an outside salesperson, trained him to generate sales, and paid him a sales commission in proportion to sales generated in his sales territory. Plaintiff worked from home, set his own working hours, and received minimal supervision from Real Stone.

The nature of Plaintiff's employment at Real Stone require that he be classified as either an exempt outside sales employee or administrative professional under of the FLSA. Because Plaintiff

13.

was an exempt employee, Real Stone was not required to pay him overtime. Accordingly, Real Stone's Motion for Summary Judgment should be granted.

Dated: December 23, 2008

Respectfully submitted,

_____
RICK D. ROSKELLEY, ESQ.
LITTLER MENDELSON

Attorneys for Defendant Real Stone Source, LLC.

# PROOF OF SERVICE

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169. On December 23, 2008, I served the within document(s):

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

By **United States Mail** – a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Las Vegas, Nevada addressed as set forth below.

By **Facsimile Transmission** – the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is **attached** to the hard copy. The names and facsimile numbers of the person(s) served are as set forth below.

By **Overnight Delivery** – by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

By **Hand-Delivery** – **via messenger**, a copy of the document(s) listed above to the party(ies) at the address(es) set forth below.

X    By **CMF/ECF**.

James D. Holman
Thomsen Stephens Law Offices
2635 Channing Way
Idaho Falls, California 83404

Attorney for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2008, at Las Vegas, Nevada.

*Renee M. Williams*
Renee M. Williams

Firmwide:86735283.1 059119.1001

15.