RICK D. ROSKELLEY, ESQ., Bar # 5125
LITTLER MENDELSON
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169-5937
Telephone: 702.862.8800
Fax No.: 702.862.8811

Attorneys for Defendant Real Stone Source, LLC.

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DAVID L. BURLING,<br><br>Plaintiff,<br><br>vs.<br><br>REAL STONE SOURCE, LLC.,<br>dba ROX PRO.,<br><br>Defendant. | Case No. 4:08-CV-00043-EJL-LMB<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Real Stone Source, LLC ("Real Stone"), by and through its counsel of record Littler Mendelson, hereby files this Opposition to Plaintiff's Motion for Partial Summary Judgment. Plaintiff David Burling ("Burling") seeks summary judgment that he was not an exempt outside sales employee during his employment at Real Stone under 29 U.S.C. § 213(a)(1). Plaintiff also seeks summary judgment on Real Stone's ninth through eighteenth affirmative defenses. Summary Judgment should be denied because Plaintiff's sales activities during his employment at Real Stone met the exempt outside sales employee requirements of 29 U.S.C. § 213(a)(1) and Real Stone has identified undisputed evidence to support one or more of its affirmative defenses.

This Opposition is based on the following Points and Authorities, any exhibits attached hereto, and all papers on file in this matter.

. . .

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY

Plaintiff's Motion for Partial Summary Judgment ("Motion") mischaracterizes the facts regarding his employment at Real Stone, and the law regarding exempt outside sales employees. Plaintiff claims that his principle job duty was to promote Real Stone products to the general public. Real Stone demonstrates in this Opposition that Plaintiff's principle job duty was to sell Real Stone Products to Real Stone's independent dealers. Plaintiff also claims that the law requires that he must "consummate" sales in order to qualify as an exempt outside sales employee. Real Stone demonstrates in this Opposition that the Fair Labor Standards Act (FLSA) only requires that Plaintiff "make" sales to qualify as an exempt outside sales employee.

The undisputed facts are that Real Stone hired Plaintiff for his experience as a seasoned salesman, supplied him with thorough sales training, permitted him discretion to conduct his sales activities unsupervised, and paid him a sales commission. Plaintiff sold Real Stone products to new and existing Real Stone independent dealers, as well as contractors, architects and/or masons. His promotional activities, if any, were only incidental to and in support of his principle role as a salesman. Because the principle activity and character of Plaintiff's work at Real Stone was sales, Plaintiff should be classified as an exempt outside sales employee.

## II. FACTS

In 2006, Real Stone advertised a vacant sales position for a candidate with at least 3 years of outside sales experience. Exhibit 1, Real Stone Employment Listing. In March, 2006 Real Stone hired Plaintiff as a sales representative for a seven state sales area comprised of Washington, Oregon, Idaho, Montana, Wyoming, Utah and Colorado. Exhibit 2, Deposition of Dave Burling, 36:1-2; 65:4-16; 25:5-7. At that time, Plaintiff had approximately 14 years of sales experience. Exhibit 3, Resume of Dave Burling. Plaintiff's business cards stated that he was a Real Stone "Sales Representative." Exhibit 4, Deposition of James Motarex, 70:12-17. Real Stone paid a straight salary of approximately $50,000 per year, and a sales commission. Exhibit 3, Deposition of Dave Burling, 70:1-21. After Real Stone hired Plaintiff, Real Stone provided Plaintiff with extensive sales training. Specifically, Real Stone required Plaintiff to attend sales conferences. Exhibit 4,

Deposition of James Motarex, 81:1-20. Real Stone's Sales Manager also conducted "ride alongs" with Plaintiff to provide him with hands on training and mentoring. *Id.* at 82:3-7; 83:6-19.

As a Sales Representative for Real Stone, Plaintiff conducted an independent search for reputable supply dealers. Exhibit 2, Deposition of Dave Burling, 21:22-25; 25:1. After targeting a reputable dealer, Plaintiff delivered a customized sales pitch designed to convince the dealer of the advantages of purchasing and reselling Real Stone Products. Exhibit 4, Deposition of James Motarex, 45:23-25; 46:1-6. Plaintiff then formulated a sales proposal that included individual pricing for Real Stone products and an initial stocking suggestion. *Id.* at 42:15-17; 46:12-16. Plaintiff drafted the sales proposal himself, or submitted it to a secretarial employee at Real Stone for drafting. *Id.* at 50:1-4. Plaintiff often submitted these Sales Proposals via e-mail or facsimile to Real Stone Controller Melanie Nardini. Exhibit 5, Declaration of Melanie Nardini, and attached Sales Proposals submitted by David Burling. Real Stone approved these sales proposals based on mechanical selection criteria, principally the prospective dealer's credit score. Exhibit 4, Deposition of James Motarex, 91:4-18. Even when a prospective dealer failed a credit check, Real Stone often "deferred to Plaintiff's judgment" in deciding whether or not to enter into a sales contract with the dealer. *Id.* at 92:5-15. If the dealer accepted the sales proposal, the dealer thereafter could order Real Stone products, including the initial stocking order suggestion made by the Sales Representative, at the prices specified in the sales proposal, without any additional approval, with payment 30 days after delivery. *Id.* at 55:4-21; 56:9-12.

After committing a local dealer to purchase and stock an initial quantity of Real Stone products, Plaintiff shifted his efforts to causing the dealer to purchase additional Real Stone products. For example, Plaintiff encouraged Real Stone dealers in his sales area to purchase more products from Real Stone. Exhibit 4, Deposition of James Motarex, 27:24-25; 57:7-12. Plaintiff also attempted to increase dealer purchases of Real Stone products by encouraging builders, architects and masons to purchase Real Stone products from the dealers in his sales area, even negotiating the quantity and purchase price of material for a specific project. *Id.* at 102:12-18. On occasion, Plaintiff directly sold Real Stone products to a builder, architect or mason. *Id.* at 75:7-12.

LITTLER MENDELSON
PROFESSIONAL CORPORATION
160 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

The facts of this case clearly demonstrate that both parties understood that Plaintiff was hired as an outside salesmen and was thus exempt from the overtime requirements of the FLSA. Indeed, Real Stone paid Plaintiff a salary plus commission during the entire time he was employed. Plaintiff understood he was receiving a salary and never requested overtime pay. Exhibit 2, Deposition of Dave Burling, 32:13-15. Plaintiff is currently employed as an exempt outside sales employee in another sales position. *Id.* at 9:6-22.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is only appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and the moving party is entitled to judgment as a matter of law. FRCP 56(c). Material facts are those which may effect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Further, because summary judgment is a "drastic device," cutting off a party's right to present its case to the fact finder, the moving party bears a "heavy burden" of demonstrating the absence of any triable issues of material fact. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n Inc.*, 182 F.2d 157, 160 (2nd Cir. 1999). In reviewing a motion for summary judgment, the court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991); *Anderson*, 477 U.S. at 249. The facts of this case, when viewed in the light most favorable to Real Stone, show that Plaintiff's sales activities meet the requirements for an exempt outside sales employee under 29 USC § 213(a)(1).

### B. Real Stone can demonstrate that Plaintiff made sales within the meaning of 29 U.S.C. 213(a)(1).

Plaintiff's Motion mischaracterizes the facts regarding his employment at Real Stone, and the law regarding exempt outside sales employees. First, Plaintiff claims that his principle job duty was to promote Real Stone products to the general public. To the contrary, Plaintiff states in the first

paragraph of his Statement of Undisputed Facts in Support of Plaintiff's Motion that Real Stone "employed him as a sales representative, and that his duties entailed developing a dealer network within a seven state region in the Pacific Northwest." Plaintiff's Statement of Undisputed Facts, ¶ 1. More specifically, Plaintiff's primary job duty was to search for reputable building material dealers to purchase and resell Real Stone Products. Exhibit 4, Deposition of James Motarex, 26:19-23. After finding a reputable building material dealer, Plaintiff "would create a product sales proposal, put out an initial stocking order suggestion, [] and hopefully [the dealer] would buy it." *Id.* at 46:12-16. A sales proposal is a specific document that identifies dealer-specific pricing for specific Real Stone products. *Id.* at 52:8-18. Plaintiff either generated the sales proposal himself, or provided the necessary pricing and product information to a secretarial employee at Real Stone to generate the sales proposal. *Id.* at 50:1-4. Real Stone has provided two examples of Sales Proposals generated by David Burling. *See* Exhibit 5, declaration of Melanie Nardini.

Once a sales proposal was finalized, the proposal was reviewed by Real Stone "to make sure that the product codes are right, make sure that the pricing is correct, to make sure that the terms and conditions are assigned to it, to make sure that [] it is within the fiscal sensibilities of the company." Exhibit 4, Deposition of James Motarex, 47:11-23. However, if the Sales Representative initially approved the proposed dealer, and the proposed dealer passed a credit check, it was Real Stone's practice to accept the dealer. *Id.* at 91:4-18. In Plaintiff's case, Plaintiff initially approved a proposed dealer that later failed the credit check, but which Real Stone accepted "because we deferred to his judgment." *Id.* at 92:5-15. These sales proposals, once executed, formed the terms and conditions of all future transactions between Real Stone and the dealer, including purchase of the Sales Representative's recommended stocking order. *Id.* at 55:8-21. Once a dealer was established, Plaintiff continued to make sales calls and sales proposals to convince them to purchase additional Real Stone products. *Id.* at 27:24-25; 57:7-12.

Plaintiff had some success with this process. Plaintiff found and enlisted Rock City as a material supply dealer for Real Stone. Exhibit 4, Deposition of James Motarex, 43:5-10. Plaintiff generated sales proposals. *Id.* at 57:5-12; Exhibit 5, Declaration of Melanie Nardini. Plaintiff "found a niche market in the resort communities." Exhibit 2, Deposition of Dave Burling, 53:20-21.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

He encouraged Real Stone dealers in those areas to carry additional Real Stone products to compliment that niche market because, in Mr. Burling's words, "you drive your sales up however you can drive it up." *Id.* at 53:20-25; 54:1.

In addition to his sales efforts with prospective and existing dealers, Plaintiff used personal contacts and networked with the general public to sell Real Stone products to builders, architects and masons in his sales area. "Quite often, it would be the salesperson [at Real Stone] either bringing the contractor to the dealer, or on behalf of the contractor negotiating with the dealer over circumstances of that particular job. That's something David did [] every week." Exhibit 4, Deposition of James Motarex, 102:12-18. In addition, Plaintiff sometimes made direct sales for Real Stone to the general public. "David [would] go to the building contractor and fill out an invoice, take the contractor's order, and obtain the contractor's signature on that order." *Id.* at 74:21-25; 75:1-11. For example, Real Stone "sold directly to [] the mason or to the Kingdom Hall [of Jehoves Witnesses] itself." *Id.* at 75:7-12.

Second, Plaintiff wrongfully claims that the law requires that he must "consummate" sales in order to qualify as an exempt outside sales employee. 29 U.S.C. § 213(a)(1) provides that an exempt outside sales employee shall mean any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act, or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.[1]

Plaintiff posits in his Motion that the term "making sales" should really mean "consummating sales." Plaintiff then references Black's Law Dictionary, not the FLSA, to define the term "consummate" as "to finish by completing what was intended; bring or carry to utmost point or degree; carry or bring to completion; finish; perfect; fulfill; achieve." Memorandum in

---

[1] In his Motion, Plaintiff does not dispute that he was regularly engaged away from Real Stone's places of business in performing his primary duty.

6

Support of Motion, p. 8. In essence, Plaintiff sets up a straw man by making up a definition of sales that is not found in the FLSA.

Fortunately, one need look no further that section 3(k) of the FLSA for a definition of the term "sales." "'[S]ale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. §203(k). In fact, 29 U.S.C. § 213(a)(1) specifically references this definition for the meaning of the term "making sales." Therefore, contrary to the position taken by Plaintiff in his Motion, the term "making sales" does not mean to "consummate sales," but rather means making "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."

In the present matter, Plaintiff's primary job duty was to search for reputable building material dealers to purchase and resell Real Stone Products. Exhibit 4, Deposition of James Motarex, 26:19-23. After finding a reputable building material dealer, Plaintiff "would create a product sales proposal, put out an initial stocking order suggestion, [] and hopefully [the dealer] would buy it." *Id.* at 46:12-16. These sales proposals, once executed, formed the terms and conditions of all future transactions between Real Stone and the dealer, including purchase of the Sales Representative's recommended stocking order. *Id.* at 55:8-21. Once a dealer was established, Plaintiff continued to make sales calls and sales proposals to convince them to purchase additional Real Stone products. *Id.* at 27:24-25; 57:7-12. Clearly, Plaintiff's sales proposals, the dealer's purchase of Plaintiff's recommended initial stocking order, and the dealer's subsequent purchases of Real Stone products based on Plaintiff's sales efforts constituted a "sale," as that term is defined by 29 U.S.C. §203(k). That Plaintiff's job entailed making sales as specifically defined by the FLSA is clearly demonstrated by a series of court decisions in the Ninth Circuit.

C.  **Persuasive authority demonstrates that the sales activities engaged in by Plaintiff are compatible with the outside sales exemption of 29 U.S.C. § 213(a)(1).**

Ninth Circuit courts and others have found that the sales activities engaged in by Plaintiff, or less direct sales activities than those engaged in by Plaintiff, meet the requirements of an exempt outside sales employee under 29 U.S.C. § 213(a)(1). In *Barnick*, the plaintiff, a former pharmaceutical sales representative, claimed that his employer Wyeth pharmaceutical company had

violated the California Labor Code by, among other things, failing to pay him overtime. *Barnick v. Wyeth*, 522 F. Supp.2d 1257, 1260 (C.D. Cal. 2007). The defendant, *Wyeth*, moved for summary judgment against the plaintiff on the grounds that the plaintiff was an exempt outside sales representative. *Id.* at 1260. The plaintiff "did not as a general matter directly sell any Wyeth products to physicians." *Id.* at 1258. Rather, "Plaintiff visited or called upon physicians on a pre-assigned list he created with Wyeth and discussed with these physicians various Wyeth pharmaceutical products...." *Id.*

The plaintiff's "primary responsibility was to generate revenue for Wyeth by focusing on visiting specific doctors in [his] assigned sales territory to persuade them to prescribe [] pharmaceutical products to the greatest extent possible...." *Id.* The plaintiff also received a sales commission "tied to the number of sales of Wyeth's products he assisted in generating." *Id.* at 1259. Granting Wyeth's Motion for Summary Judgment, the court observed "[i]f an employee directs his efforts at persuading a particular customer to purchase a product and is compensated on the basis of his success in doing so then the employee is clearly engaged in sales activity and not mere general promotion of the product." *Id.* at 1264-1265 (C.D. Cal. 2007). The court concluded that the plaintiff was an exempt outside sales employee. *Id.* at 1265.

The court in *Menes v. Roche Laboratories Inc.*, 2008 U.S. Dist. LEXIS 4230 (C.D. Cal., Jan. 7, 2008) reached the same conclusion. In that case, Roche Labs employed pharmaceutical sales representatives "to inform medical personnel about Defendant's drugs in the hope that they will prescribe Roche products to their patients." *Id.* at 3. The plaintiff sales representative alleged that she had worked more than 40 hours in one week and that Roche Labs violated the California labor code by failing to pay her overtime. Granting Roche Labs' Motion for Summary Judgment, the court found that even though the plaintiff did not "actually 'sell' anything," "Plaintiff was properly classified as an exempt outside sales person [] because the Plaintiff was hired and evaluated based on her ability as a salesperson, received training through her employer on sales techniques, received some compensation based on the total amount of products sold in her territory, and solicited new customers on her own." *Id.* at 3, 7.

The court in *D'Este v. Bayer Corp.*, 2007 U.S. Dist. LEXIS 87229 (C.D. Cal., Oct. 9, 2007)

also determined that the pharmaceutical sales representative plaintiff was an exempt outside sales employee. In *D'Este*, the plaintiff's job was to "increase the prescribing habits of doctors." *Id.* at 4. To increase the prescribing habits of doctors, the plaintiff "would meet with or call on medical professionals and try to promote a dialogue [] and find a need or a fit where your product would be utilized in their practice." *Id.* While observing that "Sales Reps do not sell Roche products to medical personnel in the classic sense," the court granted Bayer's Motion for Summary Judgment because the plaintiff did meet the outside sales employee indicia adopted in *Hodgson v. Klages Coal & Ice Co.*, and, therefore, "clearly qualifies as an exempt outside salesperson." *Id.* at 4-5.

Like the exempt pharmaceutical sales employees in the above referenced cases, Plaintiff targeted specific groups to persuade them to purchase Real Stone products. Unlike the pharmaceutical sales employees, Plaintiff researched and located new dealer-customers for Real Stone (Exhibit 4, Deposition of James Motarex, 26:19-23), formulated sales proposals for potential Real Stone dealers which included a recommended initial stocking order (*Id.* at 46:12-16), made sales calls after the dealer executed the sales proposal to convince the dealer to purchase more products from Real Stone (*Id.* at 27:24-25; 57:7-12), and made direct sales for Real Stone to the general public (*Id.* at 74:21-25; 75:1-11). Although much less direct sales activities may be sufficient, the very direct and substantial sales activities performed by Plaintiff easily qualify him as an exempt outside sales employee.

The DOL regulations also provide support for Plaintiff's status as an exempt outside sales employee. 29 C.F.R. § 541.504(c)(4) provides the following example of an exempt outside sales employee: "A driver who calls on established customers along the route and persuades regular customers to accept delivery of increased amounts of goods or of new products, even though the initial sale or agreement for delivery was made by someone else." This DOL example of an exempt outside sales employee is analogous to the present matter in which Plaintiff made regular sales calls to convince existing Real Stone dealers to purchase more products from Real Stone. Exhibit 4, Deposition of James Motarex, 27:24-25; 57:7-12.

In contrast, the DOL's example of a non-exempt outside sales employee is incompatible with the facts of the present matter: "A driver who often calls on established customers day after day or

week after week, delivering a quantity of the employer's products at each call when the sale was not significantly affected by solicitations of the customer by the delivering driver...." 29 C.F.R. §541.504(d)(2). The undisputed facts of this matter are that Plaintiff "found a niche market in the resort communities." Exhibit 2, Deposition of Dave Burling, 53:20-21. Plaintiff used this niche market to, "drive [his] sales up" with Real Stone's dealers. *Id.* at 53:20-25; 54:1. Therefore, Plaintiff "significantly affected" sales and should be classified as an exempt outsides sales employee.

Finally, in *Nielson*, the district court found that college recruiters were exempt outside sales employees, even though the recruiters did not have legal authority to enter into a contract with prospective students on their employer's behalf. *Nielsen v. DeVry, Inc.*, 302 F.Supp.2d 747 (W.D.Mich. 2003). In particular, that court found the following facts dispositive in differentiating this case from other cases where college recruiters were determined to be non-exempt: "[a]t DeVry, there really was no admissions "decision" to make; those meeting the objective criteria were admitted, those who did not were rejected. If anyone made a decision pertaining to admissions, it was the field representatives, who were responsible for sorting out from the general population of prospective students which ones were DeVry material." *Id.* at 756. In the present matter as well, there was no "decision" to make regarding acceptance or rejection of a potential Real Stone dealer – if Plaintiff accepted the dealer and the dealer passed a credit check, Real Stone accepted the dealer. Deposition of James Motarex, 91:4-18. Even where a dealer accepted by Plaintiff did not pass a credit check, Real Stone often accepted the dealer "because we deferred to [Plaintiff's] judgment." *Id.* at 92:5-15. Each of the above described cases and DOL regulations demonstrate that Plaintiff was an exempt outside sales employee.

**D.     Plaintiff's job duties matched the indicia of an exempt outside sales employee.**

Plaintiff's sales activities meet the requirements of 29 U.S.C. 213(a)(1). In addition, the nature of Plaintiff's employment at Real Stone clearly demonstrates that he was an exempt outside sales employee. Federal courts have traditionally looked to well-established indicia of outside sales employment to determine if an employee is exempt under the FLSA. Those indicia are: (1) the job was advertised as a sales position and the employee was recruited based on sales experience and abilities; (2) specialized Sales Training; (3) compensation based wholly or in significant part on

commissions; (4) independently soliciting new business; (5) receiving little or no direct or constant supervision in carrying out daily work tasks. *See Barnick*, 522 F. Supp.2d at 1262, citing *Hodgson v. Klages Coal & Ice Co.*, 435 F.2d 377, 382-84 (6th Cir. 1970); *Wirtz v. Charleston Coca Cola Bottling Co.*, 356 F.2d 428, 429-30 (4th Cir. 1966); *Wirtz v. Atlanta Life Ins. Co.*, 311 F.2d 646, 648 (6th Cir. 1963); *Jewel Tea Co. v. Williams*, 118 F.2d 202, 208 (10th Cir. 1941); *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 550 (E.D. Mich. 2004); *Fields v. AOL Time Warner, Inc.*, 261 F.Supp.2d 971, 975 (W.D.Tenn. 2003); *Bradford v. Gaylord Products*, 77 F.Supp. 1002, 1004-05 (N.D. Ill. 1948). Plaintiff's employment at Real Stone matched the established indicia of an exempt outside sales employee.

Real Stone advertised for an "Outside Sales Representative" with a "minimum of three years outside sales experience." Exhibit 1, Real Stone Employment Listing. Before working for Real Stone, all of Plaintiff's prior employment experience – more than 14 years – related to sales. Exhibit 3, Resume of Dave Burling. Plaintiff is presently working as a commissioned "salesman" for another company. Exhibit 2, Deposition of Dave Burling, 9:6-22. Plaintiff received substantial sales training at Real Stone including mandatory sales conferences, sales mentoring, and sales demonstrations conducted by Real Stone's Sales Manager. *Id.* at 25:10-25;62:1-2. Plaintiff received a sales commission of more than $7000 in 2007. Exhibit 6, Employee pay stub for Dave Burling. One of Plaintiff's job duties was to find new independent Real Stone dealers and new customers for Real Stone's independent dealers, which Plaintiff did. Exhibit 2, Deposition of Dave Burling, 21:22-25; Exhibit 4, Deposition of James Motarex, 57:5-12. Finally, Real Stone did not actively monitor or control Plaintiff's sales activities or working hours; Plaintiff typically determined when, where and how long to perform his work. Exhibit 2, Deposition of Dave Burling, 106:8-24.

E.  **Public Policy support Plaintiff's classification as an exempt outside sales employee.**

Policy considerations also dictate that Plaintiff be categorized as an exempt outside sale employee. In *Jewel Tea Co.*, the 10th Circuit Court of appeals explained the purpose for the outside sales exemption as follows:

"The reasons for excluding an outside salesman are fairly apparent. Such salesmen,

> to a great extent, work individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman."

*Jewel Tea Co. v. Williams*, 118 F.2d 202, 207-208 (10th Cir. 1941). In other words, "the outside sales exemption derives from the incompatibility of minimum wage requirements with the individual character of the work of such salesperson." *Nielson*, 302 F.Supp.2d at 753.

As discussed above, Plaintiff worked from his home in Idaho Falls, Idaho, deciding when, where and how long to work to maximize his sales commission. Statement of Undisputed Facts, ¶20, 21 & 22. Real Stone could not, and did not monitor or control Plaintiff's sales activities or working hours. In considering the policy arguments for finding a pharmaceutical sales employee an exempt employee, the court in *D'Este* found that "the lack of supervision and inability to confirm the number of hours worked by an employee is of particular importance...." *D'Este*, 2007 U.S. Dist. LEXIS 87229, 15 (C.D. Cal., Oct. 9, 2007). When Plaintiff once complained that he was working excessive hours, Real Stone specifically told him to cut back, emphasizing the company's philosophy "about health, about family, and about faith, and those came before work every time." Deposition of James Motarex, 31:1-3. During his employment with Real Stone, Plaintiff never requested that he be compensated for overtime. Exhibit 3, Deposition of Dave Burling, 32:13-15. For Plaintiff to now assert that he was not exempt "is [to] entirely divorce [his employment] from the underlying concerns motivating the exemption; i.e. the commissioned pay received by salespersons and the individual character of [his] work." *Barnick*, 522 F.Supp.2d at 1264. Sound public policy supports Plaintiff's classification as an exempt outside sales employee.

**F.    The cases cited by Plaintiff in his Motion for Summary Judgment are not analogous to the present matter.**

Plaintiff cites to several cases in his Motion from outside the Ninth Circuit in an attempt to support his position that he could not have been an exempt outside sales employee. The cases cited by Plaintiff may be distinguished from the matter at hand. In *Amendola*, the district court found that the plaintiff, a pharmaceutical sales employee, was not exempt under the outside sales exemption[2] because "influencing physicians to prescribe BMS drugs to patients [] does not constitute a 'sale' as those terms from 29 U.S.C. § 203(k) are customarily understood." *Amendola v. Bristol-Myers Squibb Co.*, 558 F.Supp.2d 459, 470-471 (S.D.N.Y. 2008). However, finding that the facts of that case conclusively demonstrated that the plaintiffs did not make any sales, the court refused to consider the outside sales indicia adopted in *Hodgson v. Klages Coal & Ice Co.*, and similar cases from the Fourth, Sixth and Tenth Circuit Court of Appeals. *Id.* at 472. In the present case, Real Stone has produced evidence that Plaintiff formulated sales proposals to potential and existing Real Stone dealers, persuaded existing Real Stone dealers to purchase more products, and made direct sales to the general public of Real Stone products. Under these facts, it is error to not consider the outside sales indicia adopted in *Hodgson v. Klages Coal & Ice Co.* and similar cases.

In *Rugerri*, the district court found that the plaintiff pharmaceutical sales representatives were not exempt outside sales employees because they "do not have the authority to negotiate the terms and conditions of the sale, [] are not allowed to negotiate the terms of any contracts with healthcare professionals and are not authorized to contract with healthcare professionals." *Rugerri v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2008 WL 4889813, 11 (D. Conn., Nov. 13, 2008). Because the court determined that it was an undisputed fact that the plaintiffs did not make sales of any kind, it refused to consider the outside sales indicia described in *Hodgson v. Klages Coal & Ice Co.* and similar cases. *Id.* at 9. Importantly, however, the court ruled "[i]f the employees make at least some sales [] then the outside sales exemption may apply...." *Id.* at 5. As described above, Real Stone has produced evidence that Plaintiff formulated sales proposals, persuaded existing Real Stone dealers to purchase more products, and made direct sales to the general public. Under these circumstances, where "the employees make at least some sales" the Court must consider the outside

---

[2] The court in *Amendola* did find in summary judgment that the plaintiff pharmaceutical sales employee was exempt under the administrative exemption of the FLSA.

13

sales indicia adopted in *Hodgson v. Klages Coal & Ice Co.* and similar cases.

In *Wirtz*, the Fifth Circuit Court of Appeals ruled that because "student salesmen" only "pave the way for student managers to subsequently take orders," student salesmen were not exempt outside sales employees. *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 265 (5th Cir. 1969). Specifically that court found that student salesman, some as young as 13 years old, were hired to deliver a "prepared talk, memorized from material provided by [the employer]," to induce the potential customer to sign an "order card" for magazines. *Id.* at 252. The student salesmen then submitted the order cards to student managers who contacted the prospective customer, executed a contract for a specific magazine subscription, and collected payment. *Id.* Student salesmen were not permitted to discuss pricing, payment, or even the terms of a specific magazine subscription offered by the company. *Id.* at 252-253. The facts in *Wirtz* are clearly not analogous to the facts of the present matter. First, Plaintiff in this case did not simply deliver a "memorized talk." Indeed, the testimony before this court in deposition form is that Plaintiff Burling was given great latitude in determining the best sales approach and routinely determined who he would see and how he would persuade them to purchase Real Stone products. Moreover, Plaintiff formulated specific sales proposals to current and prospective dealers and also negotiated pricing, and the terms of his sales proposals. Plaintiff did not "pave the way" for a more senior salesperson at Real Stone to make the sale. He, and only he, made the sales. Viewed in the light of these facts, *Wirtz* is simply not applicable.

Similarly, Plaintiff's citation to *Clements* is misplaced. In *Clements*, the Tenth Circuit Court of Appeals held that civilian army recruiters were not exempt outside sales employees because the recruiters were only "paving the way for someone else – the United States Army – to make the sale." *Clements v. Serco, Inc.*, 530 F.3d 1224, 1228 (10th Cir. 2008). Specifically, the court found that the non-exempt employees "merely cultivated a list of persons who seemed receptive to the idea of joining the Army," and that "it was the Army – and only the Army – who could enlist a recruit." *Id.* at 1228-1229. In the present matter, one of Plaintiff's principle job duties was to find potential dealers for Real Stone products, negotiate pricing and other conditions for a sales proposal, and convince the dealer to enter into the sales agreement with his employer Real Stone. Real Stone

14

"deferred to Plaintiff's judgment" when considering whether to accept a new dealer proposed by Plaintiff. Exhibit 4, Deposition of James Motarex, 92:5-15. Unlike the facts in *Clements*, Plaintiff had the effective capacity to make the sale, and he did make sales. Plaintiff did not "pave the way" for a more senior salesperson at Real Stone to make the sale. Accordingly, Plaintiff must be classified as an exempt outside sales employee.

### G. Plaintiff is not entitled to summary judgment as to all of Real Stone's affirmative defenses.

Plaintiff claims that Real Stone "has admitted that it has no evidence to support [its ninth through eighteenth affirmative defenses]." Motion, p. 2. To the contrary, Real Stone replied in its responses to interrogatories, at the beginning of discovery, only "Defendant is not aware of any facts at this time responsive to this request." Exhibit 7, Real Stone's Supplemental Response to Plaintiff's First Set of Interrogatories. Accordingly, Plaintiff has not met his burden of proof in summary judgment to show that Real Stone lacks evidence to support its claims at trial, and summary judgment against Real Stone's ninth through eighteenth affirmative defenses should be denied. Even if Plaintiff had met his burden of proof, the undisputed facts of this case are that Dave Burling was paid a salary of $50,000 per year. *See* Plaintiff's Statement of All Undisputed Facts, ¶ 21. During his employment at Real Stone, Plaintiff enjoyed paid holidays and vacation time. Exhibit 8, Employee Handbook. Therefore, pursuant to Real Stone's Fourteenth and Fifteenth Affirmative Defense, Real Stone may be entitled to a set-off and Plaintiff's Motion for Summary Judgment as to these affirmative defenses should be denied.

## IV. CONCLUSION

In his Motion, Plaintiff contends that he did not qualify as an exempt outside sales employee because he did not make sales within the meaning of 29 U.S.C. § 541.500(a)(1). As demonstrated above, however, Plaintiff engaged in very direct sales activities including researching, identifying and approving potential dealers to purchase Real Stone products, formulating sales proposals for potential and existing dealers, persuading existing dealers to purchase more Real Stone products, and making direct sales of Real Stone's products to the general public. These activities constitute sales within the meaning of 29 U.S.C. § 541.500(a)(1). In addition, Plaintiff has not shown that Real

Stone lacks evidence to prove its affirmative defenses at trial. Accordingly, Plaintiff's Motion should be denied.

Dated: January 12, 2009.

Respectfully submitted,

/s/ Rick D. Roskelley

RICK D. ROSKELLEY, ESQ.
LITTLER MENDELSON

Attorneys for Defendant Real Stone Source, LLC.

## PROOF OF SERVICE

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169. On January __, 2009, I served the within document(s):

**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

By **United States Mail** – a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Las Vegas, Nevada addressed as set forth below.

By **Facsimile Transmission** – the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is **attached** to the hard copy. The names and facsimile numbers of the person(s) served are as set forth below.

By **Overnight Delivery** – by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

By **Hand-Delivery** – **via messenger**, a copy of the document(s) listed above to the party(ies) at the address(es) set forth below.

X    By **CMF/ECF.**

James D. Holman
Thomsen Stephens Law Offices
2635 Channing Way
Idaho Falls, California 83404

Attorney for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January __, 2009, at Las Vegas, Nevada.

_____
Erin J. Beckman

Firmwide:87959304.1 059119.1001

17