RICK D. ROSKELLEY, ESQ., Bar # 5125
LITTLER MENDELSON
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV 89169-5937
Telephone: 702.862.8800
Fax No.: 702.862.8811

Attorneys for Defendant Real Stone Source, LLC.

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DAVID L. BURLING,<br><br>    Plaintiff,<br><br>vs.<br><br>REAL STONE SOURCE, LLC.,<br>dba ROX PRO.,<br><br>    Defendant. | Case No. 4:08-CV-00043-EJL-LMB<br><br>**REPLY IN SUPPORT OF REAL STONE'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Real Stone Source, LLC ("Real Stone"), through its counsel of record Littler Mendelson, hereby submits this Reply in Support of its Motion for Summary Judgment. This Motion is based on the following Memorandum of Points and Authorities, any exhibits attached hereto, and all other papers on file in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY**

As a matter of law, Plaintiff must be classified either as an exempt outsides sales employee or an exempt administrative employee. If Plaintiff's principle job duty as Real Stone was making sales, Plaintiff was an exempt outside sales employee. If Plaintiff's principle job duty at Real Stone was promotion work, Plaintiff was an exempt administrative employee. Moreover, there is no dispute of material fact because Plaintiff provides sufficient facts from his own deposition to demonstrate that he was an exempt outside sales or administrative employee. Accordingly, this case is appropriate for summary disposition.

TTLER MENDELSON
ATTORNEYS AT LAW
30 Howard Hughes Parkway
Suite 300
as Vegas NV 89169-5937
702 862 8800

## II. FACTS

On December 19, 2008, Plaintiff filed a Motion for Partial Summary Judgment asking this Court to grant summary judgment against Real Stone's fourth affirmative defense, which alleges that Plaintiff was an exempt outside sales employee. On December 23, 2008, Real Stone filed a Motion for Summary Judgment against Plaintiff asking this Court to grant summary judgment against Plaintiff's FLSA claims by finding that Plaintiff was either an exempt outside sales or administrative employee. On January 12, 2009, Real Stone filed an Opposition to Plaintiff's Motion for Partial Summary Judgment to address in detail each of Plaintiff's factual and legal objections to application of the outside sales employee exemption. By this reference, Real Stone incorporates the facts provided in each of these documents.

## III. DISCUSSION

### 1) Standard of Review

Summary judgment is not a disfavored procedural shortcut, but rather summary judgment is viewed as an integral part of the Federal Rules of Civil Procedure designed "to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment shall be granted where the pleadings, discovery, and exhibits show there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (West 2003). Material facts are those which may effect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere existence of a minor factual dispute will not preclude summary judgment if there is no genuine issue of material fact. *Id.* at 247-248. Plaintiff asks the Court to deny summary judgment as to the outside sales employee exemption as a matter of law, and deny summary judgment as to the administrative employee exemption because he claims there is a dispute of material fact regarding Plaintiff's job duties. This Reply demonstrates that there is no dispute of material fact and that Real Stone is entitled to judgment as a matter of law.

### 2) Administrative Employee Exemption to the FLSA

Plaintiff correctly states in the Opposition that Real Stone must satisfy a two-prong test to show that Plaintiff was an exempt administrative employee. First, Real Stone must show that

2.

TTLER MENDELSON
ATTORNEYS AT LAW
60 Howard Hughes Parkway
Suite 300
as Vegas, NV 89169-5937
702 862 8800

Plaintiff's "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. §541.200(2). Second, Real Stone must show that Plaintiff's "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200(3).

Plaintiff claims that Real Stone has not established that Plaintiff's primary duty was the performance of office or non-manual work directly related to the management or general business operations of Real Stone. Plaintiff also claims that there is a dispute of material fact as to whether David Burling exercised discretion and independent judgment with respect to matters of significance. As demonstrated below, each of Plaintiff's claims are without merit.

**A.  The facts alleged by Plaintiff demonstrate that he performed non-manual work directly related to the management of general business operations of Real Stone.**

The first requirement of the administrative employee exemption is that the employee's primary duty must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. §541.200(2). "The satisfy the first requirement, 'an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.' The types of work that satisfy this first requirement include 'advertising,' 'marketing,' and 'public relations' work." *Amendola v. Bristol Myers Squibb Co.*, 558 F.Supp.2d 459, 473 (S.D.N.Y. 2008), citing portions of 29 C.F.R. § 541.201; *see also Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1126 (9th Cir. 2002) ("The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."). Plaintiff's description of his job duties at Real Stone demonstrate that his primary duty was "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and,

3.

therefore, meets the first requirement of the administrative employee exemption.

On December 19, 2008, Plaintiff filed a "Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment" ("P Statement"). In the Statement, Plaintiff described his job duties at Real Stone as follows:

Q. Can you describe for me briefly what your duties were?

A. Well, to start with, there wasn't any sales in the area so I was required to develop that – to basically research the area and find out who were possibly good fits for our company to stock and work with as a supplying dealer.... P Statement, ¶7.

Plaintiff further described his job duties as follows:

(1) Going out in the field and helping the dealer's market understand the product and drive sales back to the dealer (P Statement, ¶12); (2) Making presentations to a dealer on the product line by expounding on the properties, the income potential and the market potential for the product (*Id.*); (3) Attending trade shows to promote the product for future sales (*Id.*) (4) Educating contractors, builders, developers and the specification community to the advantage of the Rox Pro system (*Id.*); (5) Help solve dealer's problems so they would be happy with RSS (*Id.*); (6) Building displays or mockup walls to show dealers how the product was to be installed (*Id.*); (7) Doing architectural presentations using Powerpoint (*Id.*); (8) Interfacing with the end customer and helping them solve problems (*Id.*); (9) marketing and promoting the product (*Id.* at ¶ 20).

Plaintiff's description of his job duties, includes "marketing," "research," and "promoting." The following cases clearly demonstrate that employees involved in marketing, research and promotion are "engaged in non-manual work directly related to the management or general business operations of the employer or the employer's customers" and, therefore, satisfy the first requirement of the administrative employee exemption.

In *Amendola*, the district court found that pharmaceutical representatives assisted with the running or servicing of a business and, therefore, were exempt administrative employees.

"BMS (Bristol-Myers-Squibb) has shows that its PR (Pharmaceutical Sales Reps)

ITTLER MENDELSON
ATTORNEYS AT LAW
60 Howard Hughes Parkway
Suite 300
as Vegas NV 89169-5937
702 862 8800

perform non-manual work directly related to the general business operations of the company. Each PR represents BMS in meetings with medical providers and promotes BMS drugs. The success of BMS's business depends in part on the success of its PRs in educating physicians about BMS drugs. Thus, the nature of the work performed by PRs is directly related to BMS's management or business operations." *Amendola*, 558 F.Supp.2d at 476-477.

In *Reich*, the First Circuit Court of Appeals found that marketing representatives assisted with the running or servicing of a business and, therefore, were exempt administrative employees.

"The primary duty of the marketing representatives [] is to cultivate [an] independent sales force, and, thereby, ultimately to increase the sales of John Alden products. To this end, the marketing representatives maintain constant contact with agents. [] [A] marketing representative is responsible for keeping his or her agents up to date on all aspects of John Alden's product line. For instance, the marketing representatives keep their agents apprised of any new products or product combinations available from John Alden, and make their agents aware of any changes in the pricing of the company's products. The marketing representatives also discuss how John Alden's products might meet the particular needs of an agent's current or prospective customers, and advise agents as to which John Alden products products to market against competing products. Often, they help their agents develop proposals for bidding on new business by recommending the appropriate combination of John Alden products to fit a prospective customer's needs. To further educate their agents, marketing representatives sometimes pass along articles about the company and/or its competitors, or give small-group presentations about John Alden's products. [] When a customer ultimately decides to purchase a John Alden product, a marketing representative acts as a conduit between the agent and prospective purchaser, on the one hand, and John Alden's underwriting department, on the other." *Reich v. John Alden Life Insur. Co.*, 126 F.3d 1, 3-4 (1st Cir. 1997). The First Circuit concluded that the marketing agent's primary duty was "aimed at promoting customer sales generally, activity which is deemed administrative sales promotion work under section 541.205(b). Therefore, there was no error in the district court's finding that John Alden's marketing representatives are engaged primarily in administrative rather than production work." *Id*. at 10.

As with the pharmaceutical sales representatives in *Amendola*, and the marketing representatives in *Reich*, Plaintiff alleges that he performed "marketing," "research," and "promoting" work. This type of work is specifically enumerated in the Department of Labor regulations as non-manual work directly related to the management or general business operations of the employer or the employer's customers. Accordingly, Plaintiff's job duties at Real Stone easily satisfy the first requirement of the administrative employee exemption.

. . .

. . .

### B. Plaintiff misstates the law when he states that to qualify for the first requirement of the administrative exemption, his primary job duty must be "the running of the business."

Plaintiff claims that a person does not meet the first requirement of the administrative employee exemption unless he is engaged in "running of the business" and "determining the business's overall course or policies." Opposition, p. 13. This statement is a gross mischaracterization of the law. The case cited by Plaintiff, *Bratt*, actually states that the first requirement of the administrative employee exemption "is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1069 (9th Cir. 1990). Rather, "[e]mployees whose work is 'directly related' to management policies or to general business operations include those whose work affects policy or whose responsibility it is to execute or carry it out." *Id. See also Reich*, 126 F.3d at 10 ("the [Department of Labor] interpretations make it clear that the [administrative] exemption is not to be limited solely to so-called 'management' personnel."). Accordingly, Plaintiff's claim that Real Stone must prove that Plaintiff's primary duty "was the running of the business or setting the overall course and policies of the business" for Plaintiff to qualify for the administrative exemption is without merit.

### C. There is no dispute of material fact as to whether Plaintiff exercised discretion and independent judgment with respect to matters of significance.

The second requirement of the administrative employee exemption is that the employee's primary duty must "include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §541.200(3). Plaintiff claims in the Opposition that the "court must conclude that an issue of fact exists as to whether David Burling exercise discretion and independent judgment with respect to matters of significance." Opposition, p. 17. In support of this claim, Plaintiff provides several statements which he believes demonstrate that his employment at Real Stone lacked significant discretion and independent judgment with respect to matters of significance. Without disputing Plaintiff's generally vague and loose recitation of the facts, Real

6.

LITTLER MENDELSON
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

Stone provides the following *additional* facts that unambiguously demonstrate that Plaintiff exercised sufficient discretion and independent judgment with respect to matters of significance during his employment at Real Stone and so satisfies the second requirement of the administrative employee exemption.

In his Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment ("P Statement"), Plaintiff identified the following activities he performed which require discretion and independent judgment with respect to matters of significance.

(1) Plaintiff "was required to [] basically research [his sales] area and find out who were possibly good fits for [Real Stone] to stock and work with as a supplying dealer...." P Statement, ¶7; (2) "Plaintiff would research potential dealers and determine which ones to pursue in order to make them local dealers," *Id.*; (3) Plaintiff went "out in the field and help[ed] the dealer's market understand the product...." *Id.* at 12; (4) Plaintiff made "presentations to a dealer on the product line by expounding on the properties, the income potential and the market potential for the product," *Id.*; (5) Plaintiff "help[ed] solve dealer's problems so they would be happy with RSS," *Id.*; (6) Plaintiff "interface[ed] with the end customer and help[ed] them solve problems," *Id.*

In its Statement of All Undisputed Material Facts in Support of Motion for Summary Judgment ("RS Statement"), Real Stone identified the following activities or conditions of employment – from Plaintiff's deposition and in his own words – which require discretion and independent judgment with respect to matters of significance.

(1) Q. So basically you would do the research, then use your judgment to determine which dealers or which suppliers you would contact to pursue?

A. Correct. RS Statement, ¶ 8.

(2) Plaintiff stated regarding his position at Real Stone "as a manufacture rep or a sales rep, basically, you're responsible for your direction most of the time," RS Statement, ¶ 9; (3) Plaintiff "had to, on a regular basis, visit the different dealers that [he] had, take care of going over any concerns that they possibly had with product

7.

ITTLER MENDELSON
ATTORNEYS AT LAW
360 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169-5937
702 862 8800

that was a problem," RS Statement, ¶10; (4) Plaintiff "made recommendations to the dealers as to what they should be carrying," RS Statement, ¶ 30.

(5) Q. Would you make recommendations as to whether or not [Real Stone] should honor [a customer] warranty?

A. Upon my pictures and my side of what the problem was, yes.

Q. Okay. Were your recommendations typically followed?

A. Yes. RS Statement, ¶ 11.

(6) Q. Did you have the ability to take distributors or potential distributors to lunch or dinners?

A. Yes.

Q. Did you do that from time to time?

A. Yes.

Q. Did you have an expense account that allowed you to do that?

A. Yes.

Q. It's my understanding that you could also exceed your expense account?

A. Yes. RS Statement, ¶ 16.

(7) Q. What about samples? Did you have the ability to leave samples with distributors?

A. Yes. Deposition of David Burling, 92:4-6.

(8) Q. When you were employed by Real Stone, you didn't have any set hours during the day, did you?

A. No.

Q. You're the one that determined basically when you did your first presentation or where you were going during the day, right?

A. The only times that varied is when they had different things scheduled that they had schedules for us, but yes.

Q. But that didn't happen very often, did it?

A. No. RS Statement, ¶ 20-21.

8.

(9) Q. How often would Mr. Motarex (Plaintiff's supervisor at Real Stone) direct you to go to a particular dealer, say during a given week?

A. There's times that he didn't in a week. RS Statement, ¶33.

Plaintiff's description of his job duties at Real Stone, in his own words, show that Plaintiff set his own hours, generally provided his own direction, had discretion to dispense samples and use his expense account in the manner of his choosing, gave advise to Real Stone's customers on a variety of subjects from warranty work to product selection, and researched and used independent judgment to choose which potential dealers to pursue for Real Stone. These activities evince a high level of discretion and independent judgment. In addition, these activities concern matters of critical significance to Real Stone's business. In sum, Plaintiff's work at Real Stone easily satisfies the second and last requirement of the administrative exemption, that Plaintiff's work required discretion and independent judgment with respect to matters of significance.

In *Reich*, the First Circuit Court of Appeals found that insurance marketing representatives exercised sufficient discretion and independent judgment with respect to matters of significance as to satisfy the second requirement of the administrative exemption.

> "These employees do not use prepared scripts or read from a required verbatim statement, nor do they operate within the contours of a prescribed technique or 'sales pitch.' On the contrary, the content of a given conversation with an agent is dictated by the needs or customer base of that agent, or by the particular information sought by the marketing representative during that phone call. Further [marketing representatives]... exercise discretion [] in determining which agent may have an interest in that product, or in fashioning bid proposals that meet the needs of the agent's customers. [] The district court did not commit error in finding that the primary duty of the marketing representatives 'includes work requiring the exercise of discretion and independent judgment' within the meaning of 29 C.F.R. § 541.2(e)(2). Therefore, we conclude that the second prong of the administrative exemption has been met in this case." *Reich*, 126 F.3d at 14.

In addition, the court in *Reich* observed that "promotion men" "generally meet the substantial importance requirement" of the administrative exemption. *Id.* at 10.

In *Amendola*, the district court found that pharmaceutical sales representatives likely exercised sufficient discretion and independent judgment with respect to matters of significance as to satisfy the second requirement of the administrative exemption.

> "The record assembled to date indicates that BMS is also likely to be able to prove at

LITTLER MENDELSON
ATTORNEYS AT LAW
60 Howard Hughes Parkway
Suite 300
as Vegas, NV 89169-5937
702 862 8800

trial that the second prong of the administrative exemption is satisfied. Its PRs tailor the content of their presentations to each medical provider based on the provider's patient population, and independently decide what promotional message will be most effective. [] They strategically manage their call lists, exercising their own judgment in deciding how often to visit a doctor and whether to add new providers to their lists. PRs, moreover, allocate their allotted samples in accordance with their own assessment of how effectively each provider will utilize those samples. They also determine how to spend their sizeable promotional budgets.... Each of these daily acts reflects 'the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered,' and each of these decisions is made 'free from immediate direction or supervision.' 29 C.F.R. § 541.202(a), (c). Further, these areas of discretion and independent judgment involve "matters of significance" because, in making each of these decisions, PRs seek to influence prescription writing practives – a matter of great consequence to BMS's business." *Amendola*, 558 F.Supp.2d at 477.

Each of these cases demonstrate that Plaintiff exercised sufficient discretion and independent judgment with respect to matters of significance as to satisfy the second requirement of the administrative exemption. Like the marketing representatives in *Reich*, Plaintiff did not use a prepared script but rather tailored his message to the needs of each individual customer. In addition, he used his own judgment to determine which dealers may have had an interest in Real Stone's products, and in fashioning bid proposals that met the needs of the dealers or their customers. Like the pharmaceutical sales representatives in *Amendola*, Plaintiff dispensed product samples and allocated his expense account in a manner of his own choosing. These activities easily require the degree of judgment and discretion necessary to satisfy the second prong of the administrative employee exemption.

      **D.**      **Plaintiff's claim that his job duties at Real Stone didn't allow him to exercise discretion and independent judgment because Real Stone exercised some control over his activities is without merit.**

Plaintiff implies in the Opposition that he could not have exercised sufficient discretion and independent judgment with respect to matters of significance during his employment at Real Stone because Real Stone exercised some degree of control over his activities. As demonstrated above, Real Stone actually exercised very little control over Plaintiff's daily activities. Moreover, as a matter of law, the fact that Real Stone exercised some control over Plaintiff's daily activities does

ITTLER MENDELSON
ATTORNEYS AT LAW
360 Howard Hughes Parkway
Suite 300
Las Vegas NV 89169-5937
702 862 8800

not preclude him from qualifying as an exempt administrative employee. In *Amendola*, the district court observed that although Bristol-Meyers-Squibb exercised substantial, daily control over its pharmaceutical sales representatives, the sales representatives had sufficient independence and discretion to qualify for the administrative exemption.

> "[C]ourts have frequently concluded that the administrative exemption applies even in those situations in which the employee's discretion in the performance of her duties is circumscribed by an employer's detailed instructions or industry regulations. As recently explained by the Seventh Circuit, 'independent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines.' *Roe-Midgett v. CC Servs., Inc.* 512 F.3d 865, 875 (7th Cir. 2008) (claims adjusters exercised independent judgment even though they used manuals and estimating software to guide their work.). *See also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374 (7th Cir. 2005) (employees of nuclear power plant qualify for administrative exemption although their discretion was channeled by regulation); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982) (assistant managers in fast food restaurants exercised discretion sufficient for managerial exemption even though this performance was 'circumscribed by prior instruction' and 'detailed guidelines')."

In the present matter, Plaintiff concedes that in his job at Real Stone "as a manufacture rep or a sales rep, basically, you're responsible for your direction most of the time," RS Statement, ¶ 9. As a matter of law, the minimal supervision Real Stone exercised over Plaintiff did not prevent him from exercising sufficient discretion and independent judgment as to disqualify him for the administrative exemption.

3) **Outside Sales Employee Exemption to the FLSA**

A. **Plaintiff is entitled to judgment as a matter of law that Plaintiff was an exempt outside sales employee.**

Plaintiff alleges in the Opposition that Real Stone "has failed to show that the outside salesman exemption applies because [Real Stone] has failed to show that David Burling made sales." Opposition, p. 6. To the contrary, Real Stone demonstrated in its Motion for Summary Judgment that Plaintiff made sales and that his promotional activities were in support of his sales activities. Plaintiff's Opposition identifies some of Plaintiff's alleged promotional activities, but does not dispute Real Stone's claim that Plaintiff made sales to Real Stone's dealers.

Real Stone states in its Motion for Summary Judgment that "Real Stone Sales

11.

Representatives are charged with locating [] new dealers to buy and stock Real Stone products." Real Stone Motion for Summary Judgment, 2:27-28; 3:1-2; Real Stone's Statement of Undisputed Facts ("RS Statement"), ¶ 7, 22. Once a Real Stone sales representative has located a dealer, he "creates a product sales proposal and an initial stocking order suggestion, and sells the dealer an initial quantity of product." Real Stone's Motion for Summary Judgment, 3:4-7; RS Statement, ¶ 24. This sales proposal "provides the essential terms and conditions for all future orders of Real Stone products." Real Stone Motion for Summary Judgment, 3:6-8; Real Stone Opposition to Plaintiff's Motion for Partial Summary Judgment, 5:20-22. After the Real Stone Sales Representative makes the initial sale of Real Stone products, the Sales Representative causes the dealer to make additional purchases from Real Stone by persuading local architects, builders and masons to purchase Real Stone products from the dealer. RS Statement, ¶ 25.

In his Opposition, Plaintiff does not dispute that his job as a Sales Representative required him to find new dealers for Real Stone, negotiate a sales proposal, and sell the dealer an initial quantity of Real Stone products. Rather, Plaintiff alleges that "promotional activities" in support of his sales activities somehow disqualify him from the outside sales exemption. Plaintiff's position is contrary to controlling law.

29 U.S.C. § 541.503(a) provides "[p]romotional work that is actually performed incidental to and in conjunction with an employee's own sale or solicitations is exempt work." As demonstrated above, Plaintiff's job as a Sales Representative required him to "locat[e] [] new dealers to buy and stock Real Stone products." Real Stone Motion for Summary Judgment, 2:27-28; 3:1-2; RS Statement, ¶ 7, 22. Only after Real Stone Sales Representatives locate a dealer, and sell it an initial quantity of Real Stone products, do the Sales Representatives engage in the "promotion work" described by Plaintiff in the Opposition. However, because this "promotion work" is "incidental to and in conjunction with" Plaintiff's "solicitations" to Real Stone dealers, the activities described by Plaintiff are "exempt work."

As demonstrated in Real Stone's Statement of Undisputed Facts and Real Stone's Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff had some success finding new dealers for Real Stone and selling them Real Stone's products. RS Statement, ¶ 7; Real Stone's Opposition,

12.

LITTLER MENDELSON
ATTORNEYS AT LAW
360 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

5:25-28; 6:1-13. However, even if Plaintiff had very little success finding new dealers and selling them Real Stone products, Plaintiff would still be an exempt outside sales representative. 29 C.F.R. § 541.500 provides that an exempt outsides sales employee is any employee "whose primary duty is [] making sales...." 29 C.F.R. § 541.500 does not reference results, only the sales employee's "primary duty." 29 C.F.R. § 541.503 makes the same distinction, stating that promotional work incidental to "outside sales or *solicitations*" is exempt (emphases added). Therefore, to qualify for the outside sales exemption, the plain language of 29 C.F.R. § 541.500 and 29 C.F.R. § 541.503 requires only that Plaintiff's "primary duty" be "making sales" or "solicitations" – not that Plaintiff actually make a specified number of sales.

Real Stone demonstrated in its Motion for Summary Judgment that Plaintiff's job as a Sales Representative required him to locate new dealers and sell them Real Stone products. Plaintiff does not dispute this in his Opposition. Because one of Plaintiff's principle job duties was to find new dealers for Real Stone, formulate a sales proposal, and sell the new dealer an initial quantity of product, the Court should enter summary judgment finding that Plaintiff was an exempt outside sales employee.

**B.     The case law cited by *both* parties demonstrates that Plaintiff is an exempt outside sales or administrative employee.**

In the Opposition, Plaintiff claims that the cases from the United States District Court for the Central District of California cited by Real Stone should be disregarded because: (1) the cases were based on the overtime provisions of the California Labor Code, rather than the FLSA, (2) the job duties of pharmaceutical sales representatives are not compatible with the job duties of material supply sales representatives, and (3) Real Stone's statement that "not a single court has determined that pharmaceutical sales employees are not exempt under the FLSA" is false. Each of Plaintiff's claims are without merit.

The provisions regarding exempt outside sales employees are substantively identical under both the California Labor Code and the FLSA. Under the California Labor Code, a person is an exempt outsides sales employee if he "customarily and regularly works [] away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products,

13.

services or use of facilities." *Barnick v. Wyeth*, 522 F.Supp.2d 1257, 1261 (C.D. Cal., 2007). Further, the outside sales exemption of the California Labor Code is "narrowly construed," (*Id.*) "[t]he employer bears the burden of proving the employee's exemption," (*Id.*), and because the California Labor Code "was modeled on the FLSA, interpretation[s] of the FLSA" are "persuasive authority for [] interpretation of the California Labor Code." *Id.* at 1263. Therefore, *Barnick, D'Este,* and *Menes* are persuasive authority that outside pharmaceutical sales employees should be classified as exempt under either California or Federal law.

Plaintiff also implies that because *Barnick, D'Este,* and *Menes* are cases about pharmaceutical sales employees, rather than material supply sales employees such as Plaintiff, this line of cases is inapposite to the present matter. Plaintiff's claim is disingenuous. Like the exempt pharmaceutical sales employees in the above referenced cases, Plaintiff targeted specific groups to persuade them to purchase Real Stone products, and was compensated, in part, based on his success. Unlike the pharmaceutical sales employees, Plaintiff researched and located new dealer-customers for Real Stone (RS Statement, ¶ 7), formulated sales proposals for potential Real Stone dealers which included a recommended initial stocking order (RS Statement, ¶ 24), and made sales calls after the dealer executed the sales proposal to convince the dealer to purchase more products from Real Stone (RS Statement, ¶ 30), and made direct sales for Real Stone to the general public (RS Statement, ¶ 31). Therefore, Plaintiff conducted even more direct sales than the pharmaceutical sales representatives in *Barnick, D'Este,* and *Menes.* Moreover, Plaintiff himself endorses *Ruggerri* and *Amendola* – two pharmaceutical sales representative cases – as cases with facts analogous to the present matter. *See* Plaintiff's Opposition, p. 7 – 8. In sum, both parties agree that the pharmaceutical sales representative cases are the most factually analogous to the present matter.

Finally, Plaintiff attempts to refute Real Stone's statement that "not a single court has determined that pharmaceutical sales employees are not exempt under the FLSA." The parties cited no less than five pharmaceutical sales representative cases in the Motion for Summary Judgment and Opposition. In *Barnick, D'Este,* and *Menes,* the Central District of California ruled in summary judgment that the plaintiff pharmaceutical sales representatives were exempt outsides sales employees. In *Amendola,* the pharmaceutical sales representative case cited by Plaintiff in his

14.

LITTLER MENDELSON
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

Opposition, the Southern District of New York held that it was "likely" that the plaintiff pharmaceutical sales representatives were exempt administrative employees. *Amendola v. Bristol-Myers Squibb Co.*, 588 F.Supp.2d 459, 477 (S.D.N.Y. 2008) In *Ruggeri*, another case cited by Plaintiff in his Opposition, the District of Connecticut refused to rule in summary judgment that the plaintiff pharmaceutical sales representative was NOT an exempt administrative employee. *Ruggeri v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2008 WL 4889813, 20 (D. Conn., Nov. 13, 2008) In sum, three courts have held in summary judgment that pharmaceutical sales representative are exempt under the FLSA, one court that pharmaceutical representatives are "likely" exempt under the FLSA, and one court that pharmaceutical sales representatives "may" be exempt under the FLSA.

**C.   The Ninth Circuit offers the most practical approach for determining if an outside sales employee is exempt.**

Plaintiff urges this Court to adopt the Second Circuit district court opinions in *Amendola* and *Ruggeri* which reject the application of the outside sales exemption to pharmaceutical sales representatives. In *Amendola*, the district court found that the plaintiff, a pharmaceutical sales employee, was not exempt under the outside sales exemption because "influencing physicians to prescribe [] drugs to patients [] does not constitute a 'sale' as those terms from 29 U.S.C. § 203(k) are customarily understood." *Amendola v. Bristol-Myers Squibb Co.*, 558 F.Supp.2d 459, 470-471 (S.D.N.Y. 2008). In *Ruggeri*, the district court found that the plaintiff pharmaceutical sales representatives were not exempt outside sales employees because they "do not have the authority to negotiate the terms and conditions of the sale, [] are not allowed to negotiate the terms of any contracts with healthcare professionals and are not authorized to contract with healthcare professionals." *Rugerri v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 2008 WL 4889813, 11 (D. Conn., Nov. 13, 2008). Both of these cases rely on a hyper-technical and impractical definition of the term "sale" to defeat the outside sales exemption.

The Ninth Circuit district court opinions in *Barnick, D'Este* and *Menes*, each finding in summary judgment that pharmaceutical sales representatives are exempt outside sales employees, offer a more common sense approach for determining if an outside sales representative is exempt. It is "an illogical elevation of form over substance" (*Barnick v. Wyeth*, 522 F. Supp.2d 1257, 1264

15.

(C.D. Cal. 2007)) to find that a sales representative whose "primary responsibility was to generate revenue [] by focusing on visiting specific doctors [] to persuade them to prescribe [] pharmaceutical products" (*Id.* at 1260) is not exempt because he is "not authorized to contract with healthcare professionals" (*Ruggeri*, 2008 WL 4889813, 11). "The distinction between sales and promotion is more logically made dependent on whether an employee's efforts are directed at persuading particular individuals to purchase a product rather than the general public and whether an employee is compensated based on the employee's success in securing purchases from particular individuals. This division seems to better comport both with a common understanding of sales work and, more importantly, with the policies behind the outside salesperson exemption." *Barnick*, 522 F. Supp.2d at 1265. *See also D'Este v. Bayer Corp.*, 2007 U.S. Dist. LEXIS 87229 (C.D. Cal. Oct. 9, 2007) ("Because patients are unable to obtain Bayer's products directly and must have a prescription from a physician, Bayer directs the focus of its sales efforts at the doctors who are responsible for making the purchasing decisions on behalf of the patient."). Because Plaintiff's primary job duty was to persuade particular individuals to purchase Real Stone products rather than the public at large, Plaintiff should be classified as an exempt outside sales employee.

### D. The cases cited by Plaintiff regarding non pharmaceutical sales employees are factually incompatible with the present matter.

Plaintiff largely relies on the case *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249 (5th Cir. 1969) to support his position that he could not have been an exempt outside salesperson. Plaintiff's reliance on *Wirtz* is misplaced because the facts of that case are clearly incompatible with the facts of the present matter. In *Wirtz*, the Fifth Circuit Court of Appeals ruled that because "student salesmen" only "pave the way for student managers to subsequently take orders," student salesmen were not exempt outside sales employees. *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 265 (5th Cir. 1969). Specifically that court found that student salesman, some as young as 13 years old, were hired to deliver a "prepared talk, memorized from material provided by [the employer]," to induce the potential customer to sign an "order card" for magazines. *Id*. at 252. The student salesmen then submitted the order cards to student managers who contacted the prospective customer, executed a contract for a specific magazine subscription, and collected payment. *Id*.

16.

LITTLER MENDELSON
ATTORNEYS AT LAW
1960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

Student salesmen were not permitted to discuss pricing, payment, or even the terms of a specific magazine subscription offered by the company. *Id.* at 252-253. Finally, the magazine subscription company would "not accept a subscription order on the terms contained in the Order Card even if the customers so request[ed]." *Id.* at 253.

The "student salesmen" in *Wirtz* are clearly not analogous to Plaintiff's job as an outside Sales Representative for Real Stone. First, Plaintiff in this case did not simply deliver a "memorized talk." Indeed, the testimony before this court in deposition form is that Plaintiff was given great latitude in determining the best sales approach and routinely determined who he would see and how he would persuade them to purchase Real Stone products. RS Statement, ¶ 30. Moreover, Plaintiff formulated specific sales proposals to current and prospective dealers and their customers and also negotiated pricing, and the terms of his sales proposals. RS Statement, ¶ 24 & 31. Although Plaintiff was required to obtain approval from Real Stone before a sales proposal became legally binding, Real Stone applied a mechanical and predictable approval process, and sometimes deferred to Plaintiff's judgment. *See* Real Stone's Opposition to Plaintiff's Motion for Partial Summary Judgment, 3: 3-19. Plaintiff did not "pave the way" for a more senior salesperson at Real Stone to make the sale. He, and only he, made the sales. Viewed in the light of these facts, Plaintiff may not rely on *Wirtz* to assert that he was not an exempt outside sales employee.

. . .

. . .

. . .

. . .

. . .

. . .

17.

## IV. CONCLUSION

Plaintiff cannot prevail against Real Stone's Motion for Summary Judgment. If Plaintiff's primary job duty at Real Stone was to make sales, then Plaintiff was an exempt outside sales employee. If Plaintiff's primary job duty at Real Stone was to conduct promotion work, then Plaintiff was an exempt administrative employee. Therefore, Real Stone's Motion for Summary Judgment must be granted.

Dated: January 30, 2009

Respectfully submitted,

_____
RICK D. ROSKELLEY, ESQ.
LITTLER MENDELSON

Attorneys for Defendant Real Stone Source, LLC.

LITTLER MENDELSON
ATTORNEYS AT LAW
960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

# PROOF OF SERVICE

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169. On January 30, 2009, I served the within document(s):

**REPLY IN SUPPORT OF REAL STONE'S MOTION FOR SUMMARY JUDGMENT**

By **United States Mail** – a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Las Vegas, Nevada addressed as set forth below.

By **Facsimile Transmission** – the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is **attached** to the hard copy. The names and facsimile numbers of the person(s) served are as set forth below.

By **Overnight Delivery** – by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

By **Hand-Delivery** – **via messenger**, a copy of the document(s) listed above to the party(ies) at the address(es) set forth below.

[x] By **CMF/ECF.**

James D. Holman
Thomsen Stephens Law Offices
2635 Channing Way
Idaho Falls, California 83404

Attorney for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 30, 2009, at Las Vegas, Nevada.

_____
Erin J. Beckman

19.