1  RICK D. ROSKELLEY, ESQ., Bar # 5125
   LITTLER MENDELSON
2  3960 Howard Hughes Parkway, Suite 300
   Las Vegas, Nevada 89169-5937
3  Telephone:  702.862.8800
   Fax No.:    702.862.8811
4
   Attorneys for Defendant Real Stone Source, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DAVID L. BURLING,<br><br>               Plaintiff,<br><br>vs.<br><br>REAL STONE SOURCE, LLC,<br>dba ROX PRO.,<br><br>               Defendant. | **Case No. 4:08-CV-00043-EJL-LMB**<br><br>**DEFENDANT REAL STONE SOURCE LLC'S TRIAL MEMORANDUM** |

Pursuant to the Court's April 11, 2008 Scheduling Order (#7), and Dist. Idaho Loc. Civ. R. 16.3, defendant Real Stone Source, LLC ("Real Stone") hereby submits its Trial Memorandum and Objections to Trial Submissions.

## I.    SUMMARY

Plaintiff accepted a marketing and promotion position with Real Stone in exchange for a generous annual salary and bonus, for all hours worked. Prior to working at Real Stone, Plaintiff had worked as an over-time exempt outside salesman. At the time Real Stone hired Plaintiff, it was a new company with a new and unfamiliar product. Therefore, Real Stone charged Plaintiff with finding local distributors to sell its modular stone products, and introducing Real Stone's products to

the construction community in a seven-state sales area. Plaintiff was Real Stone's sole and exclusive marketing representative in this sales area.

Plaintiff now claims that the Fair Labor Standards Act (FLSA) required Real Stone to pay him overtime compensation for hours worked in excess of forty hours per week. During Plaintiff's employment he never alleged that Real Stone misclassified him as an exempt Administrative Employee, or that he was entitled to receive overtime pay. Plaintiff only demanded overtime pay after he quarreled with the company and bitterly resigned his employment. Through this litigation, Plaintiff seeks to renege on the terms of his compensation agreement with Real Stone, and retroactively increase his compensation. Nevertheless, Real Stone will prove at trial that Plaintiff was a bona-fide Administrative employee and, therefore, not entitled to overtime compensation under the FLSA.

## II.   FACTS

Real Stone hired Plaintiff as an "Outside Sales Representative" on March 15, 2006. Plaintiff worked from his home in a seven-state sales area comprised of Washington, Oregon, Idaho, Montana, Wyoming, Utah and Colorado. At the time Real Stone hired Plaintiff, it was a new company with a new and unfamiliar product. Real Stone is a distributor of Rox Pro products, a natural modular stone system used in construction. Real Stone products are distributed exclusively through a network of local dealers. Real Stone designated Plaintiff as its sole representative in the seven-state sales area, and tasked him with creating a network of local dealers to sell Real Stone's products, and creating demand for Real Stone's products in the construction community.

As a Sales Representative for Real Stone, Plaintiff's primary duty was to create demand for Real Stone's products through marketing and promotion activities. The evidence at trial will show that he did this through a number of exempt activities. Indeed, Plaintiff engaged in research of his sales area and was tasked to use his judgment to find potential candidates to become dealers. He

then met with the candidates he selected and marketed to them the concept of becoming a dealer of Real Stone products. He then worked with the dealers to stock and supply them with Real Stone products. He also went out in the field and helped the dealer's market understand the product and trained their sales staff. Plaintiff made presentations to dealers on the product line by expounding on the properties, the income potential and the market potential for the product. Plaintiff also helped solve dealer's problems and interfaced with the end customer and helped them solve problems. He also engaged in similar promotion and marketing activities with architects and contractors.

It is also clear from the facts of his employment that Real Stone and Plaintiff had mutually agreed that he would be paid a salary for all hours worked. In this regard it is important to note that Plaintiff had previously worked as the over-time exempt positions of outside sales representative and manufacturers representative. In these prior positions, he was paid salary plus commission and did not receive remuneration for overtime hours worked. He was clearly accustomed to performing independent and unsupervised work for a fixed salary, regardless of hours worked, rather than an hourly wage.

Real Stone hired Plaintiff as a sales representative and offered him compensation of an annual salary of $50,000.00 per year, plus a commission, for any and all hours worked. Moreover, Real Stone's Employee Handbook that was given to Plaintiff stated that Outside Sales Representatives were exempt from overtime. The Handbook also required all non-exempt employees to obtain authorization from management before incurring overtime. At no time during his employment did Plaintiff allege that he was entitled to overtime compensation, or did he seek authorization to incur overtime. Plaintiff was not required, nor did he submit a record of his hours worked during his employment at Real Stone.

On one occasion Plaintiff complained that he was working excessive hours. Plaintiff's supervisor, James Motarex, instructed Plaintiff to focus his marketing and promotion work on

LITTLER MENDELSON
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

markets closer to home to reduce travel time. Mr. Motarex also instructed Plaintiff to heed Real Stone's philosophy that employees should prioritize their family, health and faith *before* work responsibilities. Thereafter, Plaintiff never reported that he was working excessive hours. Plaintiff admits that he did not keep a contemporaneous record of his hours worked, but rather created an estimate of his hours worked in anticipation of this litigation.

At the end of 2007, Plaintiff vacationed in Orofino, Idaho. While in Orofino, Plaintiff determined that Real Stone should purchase a parcel of land to build a distribution center, as well as a hunting lodge for Real Stone's customers. Without consulting with Real Stone, Plaintiff spoke with local officials in Orofino about the project, and placed a down payment on a parcel of land. Plaintiff then informed Real Stone about the project and demanded that Real Stone complete the sale. Real Stone refused to complete the sale because it did not believe it was economical to build a distribution center and hunting lodge in isolated Orofino. Plaintiff then promised to resign if the company refused to complete the sale. Real Stone accepted Plaintiff's resignation.

On January 28, 2008, Plaintiff filed a Complaint against Real Stone claiming that it violated the FLSA by failing to pay him overtime for hours worked in excess of 40 hours per week. Real Stone timely plead an affirmative defense that Plaintiff was a bona fide administrative employee. For the reasons that follow, Real Stone will establish at trial that Plaintiff was an overtime-exempt Administrative Employee and, therefore, not entitled to overtime compensation. Even if Plaintiff was entitled to overtime compensation (which he was not), Plaintiff's damages must be calculated in accordance with the fluctuating workweek standard.

### III. LEGAL ARGUMENTS

**A. Real Stone Will Prove at Trial That Plaintiff Was an Overtime Exempt Administrative Employee.**

The FLSA requires an employer to pay overtime compensation to employees who work more than forty hours per week unless certain FLSA exemptions apply. 29 U.S.C. § 207(a)(1). One such

4

exemption is reserved for Administrative Employees. For an employee to qualify for this exemption, the employer must show that the employee was: (1) compensated on a salary or fee basis at a rate of not less than $455 per week; (2) tasked with the primary duty of performance of office or non-manual work directly related to the management or the general business operations of the employer or the employer's customers, and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200. As discussed below, Real Stone will prove at trial that the terms and conditions of Plaintiff's employment were consistent with an overtime-exempt Administrative Employee.

**B.  Real Stone Compensated Plaintiff With a Salary of Not Less Than $455 Per Week.**

To prove that Plaintiff was an overtime-exempt Administrative Employee, Real Stone must first show that it paid Plaintiff a total compensation package of not less than $455 per week. It is undisputed that Real Stone paid Plaintiff a basic salary of $50,000 per year. It is also undisputed that Real Stone paid Plaintiff a sales commission of approximately $7,000. Therefore, Real Stone will be able to prove at trial that it compensated Plaintiff with a salary of not less than $455 per week.

**C.  Plaintiff's Primary Job Duty at Real Stone Was to Market and Promote Real Stone's Products.**

To satisfy the second element of the Administrative Employee exemption, Real Stone must identify the "primary duty" of Plaintiff's prior employment at Real Stone. "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 I.E. § 541.700(a). Real Stone will prove at trial that Plaintiff's primary job duty was to market and promote Real Stone products. When Real Stone first hired Plaintiff, it was a new company with a new and unfamiliar product. Real Stone charged Plaintiff with establishing a local dealer network, and introducing Real Stone's products to the construction community. Real Stone relied on Plaintiff's marketing and promotion efforts to generate sales for the company in Plaintiff's seven-state sales area where Plaintiff acted as the face of the company and its exclusive representative.

Without a doubt, Plaintiff's most important and principle job duty was to market and promote Real Stone's products, and Real Stone will conclusively prove the same at trial.

### D. Plaintiff's Work at Real Stone Was Directly Related to Real Stone's General Business Operations.

Plaintiff's primary job duty was to market and promote Real Stone's products. One way Plaintiff performed this duty was by researching and identifying for Real Stone suitable local dealers. Another way Plaintiff performed this duty was by educating the construction community as to the economy, ease of installation, and quality of Real Stone products. Plaintiff's marketing and promotion efforts were of the greatest importance to Real Stone's general business operations because Real Stone's product was new and mostly unfamiliar to the construction community in Plaintiff's sales area.

29 C.F.R. § 541.201(b) provides that "advertising, marketing, research" and "public relations" is work directly related to an employer's general business operations. The Administrative Employee exemption "is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole." *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1069 (9th Cir. 1990). Rather, "[e]mployees whose work is 'directly related' to management policies or to general business operations include those whose work affects policy or whose responsibility is to carry it out." *Id.* See also *Reich*, 126 F.3d at 10 ("the [Department of Labor] interpretations make it clear that the [Administrative Employee] exemption is not to be limited solely to so-called 'management' personnel."). The following cases further demonstrate that Plaintiff's promotion, marketing, research and public relations work was directly related to Real Stone, and its customers' general business operations.

In *Amendola*, the district court found that pharmaceutical representatives assisted with the running or servicing of a business and, therefore, were exempt administrative employees.

"BMS (Bristol-Myers-Squibb) has shows that its PR (Pharmaceutical

6

Sales Reps) perform non-manual work directly related to the general business operations of the company. Each PR represents BMS in meetings with medical providers and promotes BMS drugs. The success of BMS's business depends in part on the success of its PRs in educating physicians about BMS drugs. Thus, the nature of the work performed by PRs is directly related to BMS's management or business operations." *Amendola v. Bristol Myers Squibb Co.*, 558 F.Supp.2d 459, 476-477 (S.D.N.Y. 2008).

In *Reich*, the First Circuit Court of Appeals found that marketing representatives assisted with the running or servicing of a business and, therefore, were exempt administrative employees.

> "The primary duty of the marketing representatives [] is to cultivate [an] independent sales force, and, thereby, ultimately to increase the sales of John Alden products. To this end, the marketing representatives maintain constant contact with agents. [] [A] marketing representative is responsible for keeping his or her agents up to date on all aspects of John Alden's product line. For instance, the marketing representatives keep their agents apprised of any new products or product combinations available from John Alden, and make their agents aware of any changes in the pricing of the company's products. The marketing representatives also discuss how John Alden's products might meet the particular needs of an agent's current or prospective customers, and advise agents as to which John Alden products to market against competing products. Often, they help their agents develop proposals for bidding on new business by recommending the appropriate combination of John Alden products to fit a prospective customer's needs. To further educate their agents, marketing representatives sometimes pass along articles about the company and/or its competitors, or give small-group presentations about John Alden's products. [] When a customer ultimately decides to purchase a John Alden product, a marketing representative acts as a conduit between the agent and prospective purchaser, on the one hand, and John Alden's underwriting department, on the other." *Reich v. John Alden Life Insur. Co.*, 126 F.3d 1, 3-4 (1st Cir. 1997).

The First Circuit concluded that the marketing agent's primary duty was "aimed at promoting customer sales generally, activity which is deemed administrative sales promotion work under section 541.205(b). Therefore, there was no error in the district court's finding that John Alden's marketing representatives are engaged primarily in administrative rather than production work." *Reich*, 126 F.3d at 10.

As with the pharmaceutical sales representatives in *Amendola*, and the marketing

representatives in *Reich*, Plaintiff performed "education," "marketing," "research," and "promotion" work. This type of work is specifically identified in the Department of Labor regulations as non-manual work directly related to the management or general business operations of the employer or the employer's customers. Accordingly, Plaintiff's former job duties at Real Stone easily satisfy the second requirement of the Administrative Employee exemption.

E. **Plaintiff's Former Job Duties Required Discretion and Independent Judgment With Respect to Matters of Significance.**

Lastly, Real Stone must show that Plaintiff exercised discretion and independent judgment with respect to matters of significance. Real Stone exclusively relied on Plaintiff to market and promote its products in a seven-state sales area. Plaintiff worked from his home. Real Stone did not maintain an office, or employ any other persons in Plaintiff's sales area. Plaintiff was the face of Real Stone and its sole representative.

Real Stone could not and did not actively monitor Plaintiff's performance. Instead, it incentivized Plaintiff to diligently perform his duties by paying him a commission proportionate to the amount of sales he was able to generate through his marketing and promotion work. Plaintiff had discretion to dispense product samples and use his expense account to purchase meals for Real Stone customers and potential customers. He typically set his own working hours. He typically determined where, when and how to perform his marketing and promotion work. In sum, Plaintiff was permitted to self-regulate the most significant aspects of his job.

Other courts have recognized that the type of promotion and marketing work performed by Plaintiff requires discretion and independent judgment with respect to matters of significance. For example, in *Reich*, the First Circuit Court of Appeals found that insurance marketing representatives exercised sufficient discretion and independent judgment with respect to matters of significance as to satisfy the second requirement of the administrative exemption.

"These employees do not use prepared scripts or read from a required

verbatim statement, nor do they operate within the contours of a prescribed technique or 'sales pitch.' On the contrary, the content of a given conversation with an agent is dictated by the needs or customer base of that agent, or by the particular information sought by the marketing representative during that phone call. Further [marketing representatives]... exercise discretion [] in determining which agent may have an interest in that product, or in fashioning bid proposals that meet the needs of the agent's customers. [] The district court did not commit error in finding that the primary duty of the marketing representatives 'includes work requiring the exercise of discretion and independent judgment' within the meaning of 29 C.F.R. § 541.2(e) (2). Therefore, we conclude that the second prong of the administrative exemption has been met in this case." *Reich*, 126 F.3d at 14.

Further, the court in *Reich* observed that "promotion men" "generally meet the substantial importance requirement" of the administrative exemption. *Id*. at 10.

In *Amendola*, the district court found that pharmaceutical sales representatives likely exercised sufficient discretion and independent judgment with respect to matters of significance as to satisfy the second requirement of the administrative exemption.

> "The record assembled to date indicates that BMS is also likely to be able to prove at trial that the second prong of the administrative exemption is satisfied. Its PRs tailor the content of their presentations to each medical provider based on the provider's patient population, and independently decide what promotional message will be most effective. [] They strategically manage their call lists, exercising their own judgment in deciding how often to visit a doctor and whether to add new providers to their lists. PRs, moreover, allocate their allotted samples in accordance with their own assessment of how effectively each provider will utilize those samples. They also determine how to spend their sizeable promotional budgets.... Each of these daily acts reflects 'the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered,' and each of these decisions is made 'free from immediate direction or supervision.' 29 C.F.R. § 541.202(a), (c). Further, these areas of discretion and independent judgment involve "matters of significance" because, in making each of these decisions, PRs seek to influence prescription writing practices – a matter of great consequence to BMS's business." *Amendola*, 558 F.Supp.2d at 477.

Each of these cases demonstrate that Plaintiff exercised sufficient discretion and independent judgment with respect to matters of significance as to satisfy the second requirement of the

administrative exemption. Like the marketing representatives in *Reich*, Plaintiff performed his promotion work unscripted and typically unsupervised. He tailored the content of his product presentations to complement the specific interests of his audience. He also exercised discretion in determining which dealers or construction professionals would be the most receptive to his message, and fashioned bid proposals for Real Stone's independent dealers.

Like the pharmaceutical sales representatives in *Amendola*, Plaintiff dispensed product samples and allocated his expense account in a manner of his own choosing. He independently decided what promotional message would be the most effective for a specific audience. Further, just as that court deemed that the pharmaceutical representatives' efforts to influence prescription writing practices were "of great consequence to BMS's business," Plaintiff's efforts to market and promote a new product in a new market were perhaps of even greater consequence and importance to Real Stone's business.

Plaintiff may argue at trial that Real Stone improperly limited his discretion and independence. On occasion, Real Stone required Plaintiff to attend a sales conference, or it dispatched an employee to Plaintiff's sales area to providing mentoring, but never for more than a few days. Real Stone placed certain modest limits on how Plaintiff could use his expense account. Real Stone also required Plaintiff to submit weekly activity reports. However, consistent with his deposition testimony, Plaintiff will testify at trial that as a "sales rep, basically, you're responsible for your direction most of the time." Indeed, Real Stone will prove at trial that most of the time Plaintiff performed his marketing and promotion work unscripted and unsupervised. In truth, because Plaintiff worked from home, and Real Stone employed no other persons in his seven-state sales area, greater control would not have been feasible.

Other courts have held that this level of limited control does not defeat the Administrative Employee exemption to the FLSA. In *Amendola*, the district court observed that although Bristol-

Meyers-Squibb exercised substantial, daily control over its pharmaceutical sales representatives, the sales representatives had sufficient independence and discretion to qualify for the administrative exemption.

> "[C]ourts have frequently concluded that the administrative exemption applies even in those situations in which the employee's discretion in the performance of her duties is circumscribed by an employer's detailed instructions or industry regulations. As recently explained by the Seventh Circuit, 'independent judgment is not foreclosed by the fact that an employee's work is performed in accordance with strict guidelines.' *Roe-Midgett v. CC Servs.*, Inc. 512 F.3d 865, 875 (7th Cir. 2008) (claims adjusters exercised independent judgment even though they used manuals and estimating software to guide their work.). *See also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374 (7th Cir. 2005) (employees of nuclear power plant qualify for administrative exemption although their discretion was channeled by regulation); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2nd Cir. 1982) (assistant managers in fast food restaurants exercised discretion sufficient for managerial exemption even though this performance was 'circumscribed by prior instruction' and 'detailed guidelines')." *Amendola*, 558 F.Supp.2d at 476.

For each of the reasons detailed above, Real Stone will prove at trial that Plaintiff was a bona-fide Administrative employee and, therefore, not entitled to overtime compensation under the FLSA.

## IV. DAMAGES

Plaintiff claims that the FLSA required Real Stone to pay him overtime compensation, and that Real Stone failed to do the same. As discussed above, Real Stone was not required by the FLSA to pay Plaintiff overtime compensation because Plaintiff was an overtime-exempt Administrative Employee. However, even if Plaintiff was entitled to receive overtime compensation, Plaintiff's damages are limited for at least three reasons. First, Plaintiff's estimate of the number of overtime hours worked is highly subjective. Plaintiff admitted in his deposition that he didn't record the number of hours that he worked each week, but rather "had to reconstruct my hours that I worked off of going through that daily planner." Real Stone intends to prove at trial that Plaintiff's "reconstruction" is both unreliable and exaggerated.

11

Second, Plaintiff's overtime damages are limited under the fluctuating work week method which is expressly approved by the United States Department of Labor. *See* 29 C.F.R. § 778.114(a). In certain circumstances, the FLSA permits employers to pay overtime at one-half an employee's regular rate. This is referred to as the fluctuating workweek method. "[T]he fluctuating workweek is neither a defense nor an exemption to the FLSA, [and] the employee has the burden of proving that the method does not apply to his case." *Hopkins v. Texas Mast Climbers, L.L.C.*, 2005 WL 3435033, 7 (S.D. Tex., 2005); *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) (same). Finally, the fluctuating workweek method is properly applied in overtime-exempt misclassification cases, such as the instant dispute. Wage and Hour Opinion Letter, 2009 WL 648995 (January 14, 2009) ("The employer will pay back wages to the employees for overtime hours worked during the period of misclassification" [] "by dividing the weekly equivalent of the employee's bi-weekly salary by the employee's hours worked in that workweek, multiplying the resulting regular rate by one half, and multiplying the half-time rate by the number of overtime hours worked in that workweek.").

In *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008), the 10th Circuit held that the district court properly used the fluctuating workweek method to calculate a back pay award for unpaid overtime, rather than the alternative time-and-a-half formula, because the parties had a "clear mutual understanding" that the plaintiffs would be paid a fixed salary regardless of the number of hours they worked each workweek. Further, "[w]here an employee continues to work and accept payment of a salary for all hours of work, her acceptance of payment of the salary will validate the fluctuating workweek method of compensation as to her employment." Wage and Hour Opinion Letter, 2009 WL 648995 (January 14, 2009). Each of these conditions are met by the facts of the instant dispute.

Real Stone solicited, and Plaintiff accepted an overtime-exempt marketing and promotion

ITTLER MENDELSON
ATTORNEYS AT LAW
960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702 862 8800

position. Both before and after Plaintiff worked for Real Stone, Plaintiff performed similar overtime-exempt work. Further, Real Stone's employee handbook clearly provides that promotion and marketing employees are not entitled to overtime compensation. It also states that non-exempt employees should not incur overtime without advance and express authorization from management. Plaintiff agreed to work for a fixed salary and a bonus, irrespective of hours worked. Plaintiff continued to work, and accept payment of his salary for all hours work. Therefore, if the Court determines that he was not an exempt employee, his damages should be calculated in accordance with the fluctuating work week method.

Third, Plaintiff seeks liquidated damages. However, liquidated damages are discretionary with the Court. Real Stone is entitled to present a good faith defense to liquidated damages at trial. The good faith defense based on § 11 of the Portal-to-Portal Act allows the Court to deny liquidated damages or reduce them in actions where the employer proves that it acted in good faith and with reasonable grounds to believe that it was not violating the FLSA. The § 11 defense has two components: (1) subjective good faith, defined as honesty of intention and no actual or constructive notice of an FLSA violation; and (2) the employer's reasonable grounds to believe that its conduct complies with the Act.

Real Stone witness James Motarex will testify at trial that it is industry standard for construction material companies to classify outside sales or promotion employees as over-time exempt. Real Stone owner Russel Frazier will testify at trial that he relied on this industry-wide standard to classifying Plaintiff as an overtime exempt outside sales and promotion employee. Finally, Plaintiff worked as an overtime exempt employee before coming to work at Real Stone. In sum, Real Stone's good-faith classification of Plaintiff's employment as overtime exempt was both subjectively sincere, and objectively reasonable. Therefore, Real Stone intends to prove at trial that Plaintiff is not entitled to liquidated damages.

## V. OBJECTIONS TO TRIAL SUBMISSIONS

Real Stone received Plaintiff's trial submissions on June 30, 2009. Real Stone is unable to identify the exact document referenced by Plaintiff's 36th exhibit as "Interpace/Rox Pro Purchase Order Form dated June 19, 2007"; Plaintiff failed to identify the same with a bate stamp. Accordingly, Real Stone objects to the admission of this exhibit pending identification of the same.

In addition, Real Stone objects to the admissibility of the declarations of Melanie Nardini, marked as exhibits 3 and 4 to Plaintiff's list of exhibits that he may use as trial. In the Court's June 24, 2009 Order (#50), the Court struck these declarations. Accordingly, they are not admissible.

## VI. CONCLUSION

Real Stone offered, and Plaintiff accepted, an overtime exempt promotion and marketing position for a generous salary, plus commissions, irrespective of hours worked. Through this litigation, Plaintiff is now trying to renege on his agreement with Real Stone and retroactively alter the terms of his compensation. Nevertheless, Real Stone will prove at trial that the terms and conditions of Plaintiff's employment easily satisfied the requirements of the Administrative Employee exemption to the FLSA and that Plaintiff is not entitled to overtime compensation.

Dated: July 7, 2009.

Respectfully submitted,

RICK D. ROSKELLEY, ESQ.
LITTLER MENDELSON

Attorneys for Defendant Real Stone Source, LLC.

## PROOF OF SERVICE

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, Nevada 89169. On July 7, 2009, I served the within document(s):

**DEFENDANT REAL STONE SOURCE LLC.'S TRIAL MEMORANDUM**

By **United States Mail** – a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Las Vegas, Nevada addressed as set forth below.

By **Facsimile Transmission** – the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is **attached** to the hard copy. The names and facsimile numbers of the person(s) served are as set forth below.

By **Overnight Delivery** – by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

By **Hand-Delivery** – **via messenger**, a copy of the document(s) listed above to the party(ies) at the address(es) set forth below.

X    By **CMF/ECF.**

James D. Holman
Thomsen Stephens Law Offices
2635 Channing Way
Idaho Falls, California 83404

Attorney for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2009, at Las Vegas, Nevada.

*Reneé M. Williams*
Reneé M. Williams

Firmwide:90815665.1 059119.1001